# Charleston.

ELIAS HALE *et al. v.* ANDERSON PACK'S EX'ORS.

| 10 | 145 |
| 66 | 199 |

Decided April 28, 1877.

1877.
January Term.

1. The presumption that a bond has been paid, which arises after a lapse of twenty years, has not been changed or abolished by the passage of the act of limitation to suits or bonds.

2. Such presumption is not a legal bar; it is a presumption of fact which must be held to be conclusive, unless rebutted by evidence showing satisfactorily that the bond has not been paid, or furnishing good and sufficient reasons why longer forbearance has been given.

3. If the parties to the bond reside in a county whose condition was such, during the war, as to render it highly improbable that debts could or would be collected the time during which the war continued, should not be considered as forming a part of the time whose lapse gives rise to such presumptions of payment.

4. If it be shown that by the understanding of the parties by whom the bond was executed it was not to be paid till a future time, the time which elapsed from the giving of the bond to such future time, should not be considered as forming any part of the time whose lapse gives rise to such presumption, though the bond on its face be payable on demand.

5. A rehearing of a chancery cause should not be allowed on the ground of newly discovered evidence, when it appears that the affidavit of the witness could readily be had, setting out the new testimony, but, instead of its being taken, the party asking a rehearing, merely files his own affidavit that he believes the evidence of such witness is material.

This was an appeal and *supersedeas* from two decrees of the circuit court of the county of Mercer, rendered in two causes, in one of which Elias Hale was plaintiff and John R. Dunlap and James Roles, executors of Anderson Pack, were defendants, and in the other of which Lorendo D. Martin was plaintiff, and said executors were defendants.

A decree of reference was had in the causes on the 9th of October, 1868, and the commissioner reported as one of the debts against the estate of said Pack, a claim in favor of John H. Vawter.

The report of the commissioner, allowing this claim, was excepted to by the defendants, but the exceptions were overruled by the court below, and the decrees appealed from were rendered.

*J. M. Davis,* for appellants, referred to the following authorities :

*Stevenson v. Tavener,* 9 Gratt., 398 ; *Watson v. Hunt,* 6 Gratt., 633 ; *Towner v. Lucas,* 10 Gratt., —— ; 1 Selw. N. P., 136 ; *Cutter v. Hinton,* 6 Rand., 509 ; *Waggoner v. Gray,* 2 H. & M., 603 ; 1 *Smith L. C.* 213, 214, and the following acts of the Legislature.

*A. Mahood,* for appellees:

Code Va., 1849, ch. 149, §5 ; Acts 1873, p. 286 ; Code W. Va. ch. 104, § 18, 19 ; 2 Mumf., 305 ; *Nuckles v. Jones,* 8 Gratt. 267 ; *Thompson's* case, 8 Gratt., 637 ; 20 Gratt., 296.

*A. N. Campbell,* for appellees :

*Tazewell's exec'r v. Whittles' adm.,* 13 Gratt., 344 ; *Hudson v. Hudson,* 6 Mumf., 352 ; *Colleson, adm. v. Huffman,* 6 W. Va., 308 ; Code W. Va., ch. 125.

The appeal was granted upon the petition the of defendant.

A sufficient statement of the case is given by Green, President, who delivered the opinion of the Court.

The Hon. Evermont Ward, Judge of the ninth judicial circuit, rendered the decrees appealed from.

GREEN, PRESIDENT:

In 1867 two chancery suits were brought in the circuit court of Mercer county, to audit the debts of Anderson Pack, deceased, and to charge his real estate with their payment, his personal estate being insufficient. A decree was rendered in these causes on October 9, 1868, directing a commissioner to audit these debts. In January, 1869, the commissioner made his report auditing those debts. In February, 1869, this report was recommitted generally by a consent decree, and in May, 1869, the commissioner made his second report of the auditing of debts. In this report he audits a debt in favor of John H. Vawter of $644.70 principal, and $363.-23 interest. The auditing of this debt was excepted to, and it constitutes the whole subject of controversy in these causes. The exception was based on two distinct grounds. The *first* was that the debt was insufficiently proven, and the *second* was that it was barred by the statute of limitations. In September, 1870, this exception, so far as it was based on this first ground, was overruled, and in May, 1875, it was overruled so far as it was based on the second ground.

The debt was supported by the bond of Elliot Vawter, James Vawter and Anderson Pack, payable on demand to John H. Vawter, for $1,000, and dated April 18, 1843. The consideration stated on the face of this bond was the loan of $1,000 made by John H. Vawter and Robert Campbell for the obligors, and the bond further obliged the obligors to indemnify James H. Vawter, the obligee, against all costs to which he might be subjected in case he was sued by Campbell for the amount borrowed. This bond was reduced to the amount

audited by the commissioner by credits which were set out in a paper filed with the bond, the first item of these credits being interest paid to Wm. Dunlap, December 19, 1851, and all of these credits were payments made Wm. Dunlap. The evidence shows that the obligors in this bond were merchants and partners under the name of Pack & Vawter, and they applied to Campbell to lend them $1,000, to be used in their business. He agreed to do so, provided John H. Vawter, who was a brother of one of the partners of Pack & Vawter, would execute to him his individual note. He declined to take the note of the partnership or any of its members. But said he would lend the money on John H. Vawter's note alone. Thereupon, John H. Vawter gave to Campbell his individual note, and the partnership of Pack & Vawter got the $1,000, and John H. Vawter took from them the $1,000 bond, the basis of his claim audited by the commissioner. Sometime afterwards, Campbell wanted his money, and the $1,000 was borrowed of Mrs. Dunlap and paid to Campbell, John H. Vawter executing his bond, probably with security, to Mrs. Dunlap. The firm of Pack & Vawter, it is presumed, paid the interest on this $1,000 for years to Mrs. Dunlap, and a portion of the principal, as the credits given on the $1,000 bond to John H. Vawter are of payments made to Mrs. Dunlap. There is, however, no evidence of this except the paper filed with the bond by John H. Vawter. The court was unquestionably right in holding that this evidence fully established the justice of John H. Vawter's claim originally. There are some frivolous exceptions to depositions which the court properly disregarded, only one of these exceptions has been urged before this Court. Allen T. Caperton proved all the facts above stated positively, but on cross-examination he stated he was not sure that he was present when John H. Vawter got the money of Campbell or when the money was got of Mrs. Dunlap, but he thought it highly probable that he was present when the money was ob-

tained from Campbell, and also when the debt to him was paid, as he transacted a great deal of his business. And he added that his information was chiefly derived from John H. Vawter and Elliott Vawter, the partner of Mr. Pack, and one of the obligors. From this I infer that the material facts above stated were personally known to Mr. Caperton, and that they were further confirmed by the statements of the Messrs. Vawter, probably made when together and at the time these transactions took place. The most material part of his statement is also confirmed by the face of the $1,000 bond to John H. Vawter. The court, therefore, did not err in disregarding this exception to Mr. Caperton's deposition. There was no evidence that John H. Vawter had paid off his bond to Mrs. Dunlap, but this was entirely immaterial, as she gets up no claim against Pack's estate, and the evidence shows that she had no claim against Pack & Vawter, though they got the $1,000 loaned by Campbell, and it was repaid by the money borrowed of her.

It is obvious that John H. Vawter's claim against Pack's estate was not barred by the statute of limitations. Prior to the Code of Virginia of 1849, there was no limitation to a suit on the bond given to him dated April 18, 1843. By that Code, ch. 149, §5 and 19, this bond, then due and on which no suit had been brought, would not become barred till twenty years after July 1st, 1850. That is till July 1st, 1870, even had no war intervened. The only question worthy of serious consideration is, was this bond to John H. Vawter paid by the obligors? And it is insisted that as more than twenty years elapsed since the bond became due before the decree directing debts against the estate of Pack to be audited, that this bond ought to be presumed to have been paid. As bearing on this question, it was proven that the parties to this bond resided in Mercer county, West Virginia; that this county was held during the war by Confederate troops, except in the spring and summer of

1862, and the fall of 1864, but it was subject to raids of Federal troops during the entire war; that many citizens of the county, on account of the disturbed condition of the country, absented themselves from the county till after the close of the war: that the court house was burned in the spring of 1862 by Federal troops, and the record books of the county were removed to Wytheville till after the close of the war for safe keeping; that courts were held during the war in different parts of the county where it was not occupied by Federal troops, the minutes of their proceedings being entered on loose sheets of paper, in the absence of the record book.

It has been insisted that since the passage of a statute of limitations to suits on bonds, that no presumption of payment of a bond from lapse of time can arise. This position does not seem to me to be sound. Though doubtless the presumption of payment had its origin in the absence of any statute of limitation, nevertheless it is held that though a party do es not plead the statute o limitations, he may rely on the presumption of payment from lapse of time. See *Cooper v. Turner*, 2 Starkie, 497; 3 Eng. C. L. R., p. 447. The presumption of payment from lapse of time is, I conceive, in no manner effected by the passage of an act of limitation to suits upon bonds. This conclusion is consonant to reason and supported by the English authorities.

The first enquiry is, should the time during which the war was pending, in view of the state of affairs in Mercer, be considered as any part of the time on which a presumption could be based that this bond was paid? In the case of *Jackson v. Pierce*, 10 Johns., 413, the eight years during which the revolutionary war was pending was, under the circumstances of the case, before the court excluded from the time in which presumption arose. And in *Newman v. Newman*, 1 Starkie, 101; 2 Eng. C. L. R., p. 314, payment of money secured by a bond is not to be presumed, although more than twenty years have elapsed since any acknowledgment that any

1877.
January Term.

Hale *et al.*
v.
Pack's ex'rs.

sum was due upon it, if the obligee had ever since that acknowledgment resided abroad. The inference is, that the presumption of payment does not arise during the time, which, by the condition of the country or the situation of the parties, it was highly improbable that the bond would have been collected, although there may be no actual impossibility to have collected the bond, even by legal proceedings. Applying these principles to the case before us, we do not think that the time during which the war was pending should be considered as forming any part of the time in which the presumption that this bond was paid would arise. This would seem to be the legislative view of the subject, as in the condition of the county of Mercer during the war, this time would not now be counted in considering the question whether the statute of limitations had barred a suit on this bond. See 9 W. Va., page 616.

It is admitted that the decree of October 9, 1868, referring the cause to a commissioner to audit debts against Pack's estate, was equivalent to a suit upon this bond by the obligee. Nearly twenty-five years and six months elapsed from the time this bond on its face was due till this decree was rendered, or after excluding the time that the war was pending, nearly twenty-one years and six months elapsed. Did this lapse of time, under the circumstances shown, raise a presumption that this bond was paid?

This presumption of payment is not a legal presumption absolutely conclusive, but it is a presumption of fact, which, though not conclusive, is yet *prima facie* proof of payment. If less than twenty years, though nearly that time, have elapsed, all the circumstances are considered, including lapse of time, and their natural weight as evidence is to be given to each circumstance, including lapse of time, but if twenty years has elapsed a legal presumption arises, which must be accepted as proof, unless the contrary appears by evidence. But this presumption may be rebutted by proof which is sat-

1877.
January Term.

Hale et al.
v.
Pack's ex'rs.

isfactory that the debt has not been paid, such as the proof of payment of interest within the twenty years, the continued absence from the country of the obligee, the continued insolvency of the defendant or obligor, or other strong circumstances 'shewing non-payment, or shewing good causes for longer forbearance. See *Searle v. Lord Bennington*, 2 Str. R., 826 ; *Newman v. Newman*, 1 Starkie, 101 ; *Giles v. Baremore, et al.*, 5 Johns. Ch. R., 545 ; *Mean v. Stevens*, Coxe N. J., 433 ; *Henderson v. Lewis*, 9 Serg. & R., 379 ; *Cope v. Humphreys*, 26 Serg. & R., 15 ; *Eustace v. Gasher, ex'or of Eustace*, 1 Wash., 188.

Do sufficient circumstances exist in this case to repel the presumption of payment? I think so. The bond, it is true, was drawn payable on demand, but the accompanying circumstances show conclusively that neither the obligors nor the obligee expected this bond to be paid promptly. It is true a legal cause of action arose the day the bond was executed ; but it would have been a gross breach of good faith if the obligor had sued on it promptly. It is true that the bar of the statute of limitations could not be removed by proving that the bond, though payable on demand, was, according to the understanding of the parties, not to be sued on for years. See *Watson v. Hunt*, 6 Gratt., 633. Such proof would alter the plain meaning of the bond, which could not be done by parol evidence. But the question whether such parol evidence is admissible to repel the presumption of payment is very different. In such case any fact may be proven which shows good cause for long forbearance. Such evidence is offered not to explain or alter the bond, but to explain a matter arising after the execution of the bond ; that is, to explain the non-enforcement of the bond promptly. The bond in this case was given by the members of a mercantile firm to a brother of one of the obligors. It was given for money advanced to them to be used in their business. And the obligee borrowed it for the express purpose of letting them have the use of

it in their business. Their credit was not sufficient to enable them to borrow this money, and the obligee borrowed it on his own, simply for their accommodation. The whole object of this arrangement would have been defeated by the obligee demanding the payment of this bond promptly. The understanding was obviously that this was to be a permanent loan to this firm, and, carrying out this understanding, the obligee, when, some time afterwards, he was called upon to refund the money he had borrowed, instead of calling on this firm to pay him the bond he held, he borrowed the money himself from a third party, and let this bond remain uncollected. It is true the evidence does not shew how long it was before the obligee was called upon to refund the money he first borrowed of Campbell. It is, however, reasonable to suppose that some years elapsed before he was required to repay this money; for the evidence does shew that Campbell knew for what purpose the money was borrowed, and it is not reasonable to suppose he would have lent the money unless he could have spared it for a considerable length of time. For any other loan would have been no accommodation to the borrower under the circumstances. So too the evidence fails to shew how long it was before Mrs. Dunlap required the return of the money she loaned, if she has yet ever required its return; but under the circumstances it is improbable that she required it for a considerable time. It is true that the list of credits furnished to the commissioner by John H. Vawter shews that she did not require this money to be repaid her for many years, and that Campbell did not require his money to be refunded for some seven years; but this paper being furnished by John H. Vawter cannot be used to repel the presumption of the payment of his debts. But, independent of this paper, the circumstances under which Campbell and Mrs. Dunlap made these loans, show that they did not expect the return of the money loaned for years. And the obvious understanding of the obligors in the bond to John H.

Vawter, as well as his understanding, was, that till required to pay the money borrowed by him for them he would not require them to pay their bond to him. This understanding is in fact purely inferrable from the face of the bond. Till therefore he was thus called upon to pay this money no presumption could arise that the bond he held was paid to him. Presumption of payment under such circumstances would be as unreasonable as a presumption that a bond was paid before it was due. Abating therefore such reasonable time after the bond was given before, according to the understanding of the parties, it was to be paid, and also the time during which the war was pending, and the time during which presumption of payment could arise in this case, would be much less than twenty years. And the circuit court therefore did not err in refusing to sustain the exception to the allowance of this debt to John H. Vawter.

But the appellant further complains that the court erred in refusing to grant him a continuance at the May Term, 1875, when it overruled his exception to the commissioner's report, or to permit him on his petition to have the action of the court reviewed. This application for a continuance, and petition for a review were supported by the affidavit of one of the executors of Pack ; that his co-executor was a resident of Virginia ; that his presence was important, and he was prevented from being present by sickness in his family ; that he had that day heard of evidence that he could not have obtained by due diligence ; that he had that day conversed with the witness who would give this evidence, but that he had not had time to take his deposition, and that he believed this evidence material and important. The court properly refused to continue the case or to consider the application to reconsider and review its decision overruling the exception to the commissioner's report. This claim of John H. Vawter had been filed with the commissioner prior to May 10, 1869. The opposite parties had already had six years in which to look up evi-

dence relative to this claim. If further time was proper to be allowed the parties, it certainly should not have been given unless they showed conclusively that the evidence alleged to have been newly discovered was really material. But the affidavit does not state who this witness is or to what he would testify, which might easily have been stated, as the affiant had just conversed with the witness. The affidavit of the witness himself might and ought to have been filed. To have granted a continuance and reheard the case on this affidavit would have been to have so done, not because the court deemed the evidence material, but simply because the affiant thought it material. Such action by the court would, under the circumstances, have been obviously improper. *Nichols v. Jones,* 8 Gratt., 267 ; *Brown v. Speyers,* 20 Gratt., 296. Of course the statement that one of the executors of Pack was necessarily absent from the court, furnished no reason for a rehearing of the cause, as it is not perceived how his presence could possibly have aided the court in coming to a correct conclusion.

So much of the decrees, therefore, of the circuit court of May 6, 1874, and May 3, 1875, as are appealed from, must be affirmed, and the appellees must recover their costs against the appellants, John R. Dunlap and James Roles, executors of Anderson Pack, to be paid out of the assets of the estate in their hands to be administered, and also $30 damages. And this cause should be remanded to the circuit court of Mercer, to be therein proceeded with.

Judges Haymond and Johnson concurred in this opinion.

DECREE AFFIRMED and cause remanded.