# 𝕎𝕦𝕥𝕙𝕖𝕧𝕚𝕝𝕝𝕖.

### LIGHTFOOT'S ADM'R v. GREEN'S EX'OR.

#### JUNE 13, 1895.

1. ASSIGNMENT NOT UNDER SEAL—*Statute of Limitations—Laches—Presumption of Payment.*—The claim of the complainant was based on a written assignment of a bond, which assignment, not under seal, was made about July 16, 1875. Suit was instituted on this assignment in 1889.

HELD:

> Under the peculiar language of the assignment, and the facts and circumstances of this case, the claim of the complainant is not barred by the statute of limitations, neither has there been such laches on his part, nor was the condition of the parties and their relations to each other such as to raise the presumption of payment.

Argued at Richmond.    Decided at Wytheville.

Appeal from a decree of the Circuit Court of Culpeper county, pronounced at its September term, 1891, in a suit in chancery wherein the appellant was the complainant, and the appellee and others were the defendants.

*Reversed.*

The opinion states the case.

*Rixey & Barbour*, for the appellant.

*G. D. Gray* and *R. T. Greene*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

Edward Lightfoot held a debt against the estate of F. F. Henry, deceased, which debt on the 16th day of July, 1875, amounted to the sum of $1,101, and for the accommodation of James W. Green, executor of F. F. Henry, deceased, took in settlement of his claim an assignment of a bond of Bettie M. Wevv to Green, dated the 21st day of October, 1872, for the sum of $900, with interest from the date thereof at 8 *per cent. per annum* until paid, and payable one year after its date.

This bond was secured, as stated in the assignment, by a lien on real estate and otherwise; the lien on the real estate consisting of a vendor's lien reserved, and a deed of trust on a house and lot in the town of Culpeper, conveyed by James W. Green to Bettie M. Wevv's trustee, and the other security spoken of appears to have been an assignment of Bettie M. Wevv's interest in some property or estate in the county of Fauquier, and the assignment referred to is in the following words, to-wit:

"For value received, I assign to Edward Lightfoot the bond of Bettie M. Wevv to myself, dated 2nd day of October, 1872, for nine hundred dollars ($900) payable one year after date, with interest from date until paid at the rate of eight *per centum per annum*, which bond is secured by a lien on real estate, and otherwise; and I agree to continue bound as assignor of said bond, to said Lightfoot, without his taking any steps to enforce the payment thereof; he leaving the said bond in my possession for collection in such manner as I think proper, and I agreeing to collect the same without fee, commission, or other charge, and to account to him for the whole amount of said bond; said Lightfoot, through John Lightfoot, having accepted of said assignment for my accommodation, in payment of his debts against the estate of F. F. Henry, deceased, of which I am the executor.

· JAMES W. GREEN.''

Edward Lightfoot died about June, 1882, leaving a will appointing John T. Lightfoot, his son, his executor, and his wife, Ann V. Lightfoot, his executrix, but John T. Lightfoot alone qualified under the appointment.

James W. Green died April 1, 1884, leaving a will appointing his wife, Ann S. Green, his executrix, and who duly qualified as such.

After the death of Green, and in February, 1889, James L. Kemper, who had qualified as administrator *d. b. n. c. t. a.* of Edward Lightfoot, deceased, in the place and stead of John T. Lightfoot, who had been permitted to resign as executor, filed his bill of complaint on behalf of himself and all other creditors of James W. Green, deceased, in the Circuit Court of the county of Culpeper, seeking to recover of Green's estate, the amount due on the Bettie M. Wevv bond, assigned by Green to Edward Lightfoot, the assignment having been found by Gen. Kemper among Lightfoot's papers; but before the hearing of this suit Gen. Kemper was permitted to resign his office as administrator *d. b. n. c. t. a.* of Edward Lightfoot, deceased, on account of ill health, and R. P. Lake qualified as such, in his place and stead, and filed an amended and supplemental bill in the cause. Ann S. Green (in her own right, and as executor of James W. Green, deceased), Bettie M. Wevv, George D. Gray, trustee for Bette M. Wevv, and other necessary parties were made parties defendants to both the original and amended bill; and Ann S. Green, in her own right and as executrix, demurred to and answered both the original and amended bill, and filed her special plea of the statute of limitations, in which demurrer the plaintiff joined, and replied generally to the answer of Green's executrix, and to her special plea. And the cause coming on to be heard upon these pleadings, together with the evidence for both plaintiff and defendant, the Circuit Court of Culpeper by its decree entered at the September term, 1891, dismissed both

the original and amended bill, with costs to the defendant Ann S. Green, in her own right and as executrix. From this decree an appeal was allowed R. P. Lake, administrator *d. b. n. c. t. a.* of Edward Lightfoot, deceased, to this court.

The defences relied on by the personal representatives of James W. Green, deceased, are the statute of limitations, laches, and payment. We come first to consider the plea of the statute of limitations. It will ·be observed that by the terms of the assignment of the Wevv bond by Green to Edward Lightfoot in payment of the debt held by Lightfoot against the estate of F. F. Henry, deceased, Green agreed to remain bound to Lightfoot, without Lightfoot's taking any steps to enforce the payment of the bond, and to collect this bond without fee, commission, or other charge, and to account to Lightfoot for the whole amount of the bond, giving as a reason for continuing to be so bound to Lightfoot, as assignor, that Lightfoot had accepted the assignment for his (Green's) accommodation, in payment of Lightfoot's debt against the estate of F. F. Henry, deceased, of which Green was the executor; and it would therefore seem clear, from the nature of this obligation and undertaking, that the statute of limitations could not run against Lightfoot, or his personal representative, so long as the Wevv bond was not barred by the statute, and Green lived, and was capable of performing the duties assumed by him under the assignment. Assuming then, that the statute of limitations began to run in favor of Green's estate from the date of his death, and treating the assignment as an agreement not under seal, this suit having been instituted in February, 1889, five years, the statutory limit to the right of action on such an agreement, had not elapsed. It is contended, however, that the house and lot upon which the Wevv bond was secured, situated in the town of Culpeper, having been sold under the trust deed in August, 1881, and purchased by Green, and the purchase money, $600, paid by

applying the same in part satisfaction of the Wevv bond, the statute of limitations began to run in favor of Green to the extent, at least, of the $600, as of that date.

While it does not appear in this record that Edward Lightfoot, who was then in the 82nd year of his age, and who was confined to his house in the county of Madison, twelve miles from Culpeper courthouse, knew anything of the sale of the house and lot and its purchase by Green, we do not deem it necessary to express an opinion as to whether or not the statute will begin to run in favor of an attorney collecting money for his client until the latter is in the possession of knowledge of the collection, or might have acquired such knowledge, for the reason that when Green assigned the Wevv bond to Lightfoot, the assignment carried with it the vendor's lien and trust deed on the house and lot securing the bond, and when Green purchased the property at the sale in August, 1881, with Lightfoot's money, he assumed the relation to his client of trustee, and held the property for Lghtfoot's benefit, and continued bound to him, under the assignment, for the whole amount of the Wevv bond, as though the sale had not taken place; and the purchase of the property, the deed being to himself, could not, under the circumstances, be considered as a collection by Green as Lightfoot's attorney.

Moreover, we think it is entirely reasonable to assume, from the fact that Green did not have this deed recorded, that he took this view of the transaction, and regarded this entire matter as between him and Lightfoot still unsettled.

As to the contention that Lightfoot and his personal representatives had been guilty of such laches as to deprive the plaintiff of the right to recover in this suit, we think this position wholly untenable. It will be observed that, by the very terms and conditions clearly expressed in the assignment and written by Green himself, there was nothing left for Lightfoot to do, as Green, his general counsel and intimate

personal friend, and in whom, as this record shows, he placed implicit confidence, assumed to do everything needful to collect the Wevv bond and to account to him (Lightfoot) for the full amount due thereon, reserving to himself the absolute control of the entire matter, and the right to exercise his own discretion as to what steps should be taken to enforce the payment of the bond. It would, therefore, seem clear that the equitable doctrine of laches has no application whatever to this case.

The only remaining question to be disposed of is, Has this debt, due by Green to Lightfoot, by reason of this assignment, been paid? It is not asserted that the personal representative of James W. Green has made payment, but the contention is, that from the condition of the parties, and their relations to each other, together with the lapse of time, the presumption of payment is raised, and is not repelled by the facts and circumstances proved in the record.

There is a recognized distinction between the statute of limitations, and the presumption of payment from the lapse of time, the condition of the parties, their relations to each other, &c. In the one case the bar is absolute, in the other it is denominated natural presumption of payment, and may be rebutted. *Perkin's Adm'r* v. *Hawkin's Adm'r*, 9 Gratt. 656; *Hutsonpillar's Adm'r* v. *Stover's Adm'r*, 12 Gratt. 588; *Updike's Adm'r* v. *Lane*, 78 Va. 136; *Booker* v. *Booker*, 29 Gratt. 605; *Hale* v. *Pack's Ex'ors*, 10 W. Va. 145.

There is certainly nothing in the lapse of time in this case to raise the presumption of payment, and the condition of the parties to the agreement of July 16, 1875, and their relations to each other do not raise a presumption of payment that is not repelled by facts and circumstances proved on behalf of plaintiff. Taking this view of the case, it is unnecessary to consider the intimation, or charge of fraudulent and deceitful concealment of facts on the part of Green, but it is fair to say

that we do not think that there is any evidence in the record to show that Green intended to defraud his client and friend, Edward Lightfoot, or to conceal from him any material fact affecting his interest.

The fact that he failed to keep Lightfoot fully advised as to the status of the Wevv bond, and as to what was being done towards its collection, might have been, and doubtless was, due to the fact that he recognized himself as bound to Lightfoot for the whole amount of the debt and fully understood and appreciated the relations that existed between them. As before stated, it is no where claimed in this record that the personal representative of Green has paid the debt asserted in this cause; and the principal witness examined on behalf of the defence is A. Mc. D. Green, a son of James W. Green, who states that he went into his father's office in the fall of 1876, and remained with him until his death, and then frankly says that "it is possible, but scarcely probable, that the amount of this debt was paid to Edward Lightfoot after he went into his father's office, and, furthermore, that one of the first tasks that he undertook after his father's death, was to arrange all of his papers in such manner that he could refer to them conveniently—the receipts being filed by him for each year together, and separated into alphabetical bundles. This was done before witness' office, in which his father's papers were, was burned, and witness did not remember having seen any paper showing settlement with Lightfoot of this Wevv bond; and while the bundle of receipts, "L" which were in the vault were badly charred, if not totally illegible, he found after the fire, in this bundle, at least two receipts with the signature of Edward Lightfoot to them, but both referred to a general settlement between Green and Lightfoot of July 18, 1881, and in which settlement the Wevv matter is not mentioned. This bundle of receipts witness also says he took with him to Gen. Kemper and examined them with Gen. Kemper,

carefully. In the testimony of Gen. Kemper and other witnesses examined on behalf of the plaintiff, it is shown that James W. Green was a most careful and painstaking business man, and that it was highly improbable that he would have discharged this liability to Lightfoot without taking up the assignment under which he was bound.

Filed with the answer of defendant are statements made out by James W. Green, after 1875, showing for taxation, his choses in action and his liabilities, and also a copy of an account showing a general settlement between Green and Lightfoot, on July 29, 1881, of all transactions from 1860 to date of this settlement; and in neither of these papers is the Wevv matter mentioned, and hence they afford no aid in ascertaining whether or not this debt has been paid. If these statements and this account can be considered as evidence at all, the account tends to show, rather than otherwise, that the debt had not been paid prior to July 29, 1881, and certainly there is no evidence of the slightest character that it was paid after that time; and from the date of the assignment, July 16, 1875, to the fall of 1876, when A. Mc. D. Green went into his father's office, we find not even a circumstance or a transaction of any kind in proof to sustain a contention that the debt had been paid, and the only suggestion that the debt had been paid during that period is found in the deposition of A. Mc. D. Green, in which he says that he was satisfied, upon investigation, that this assignment had been made as a mere temporary affair, and that the matter had been settled within a short time—probably within a few weeks—after the assignment was made. But he fails to give any reason for this impression.

In fact, the very terms of the assignment, and the surrounding circumstances, negative at once the suggestion that it was made as a temporary affair.

For the foregoing reasons we are of opinion that there is error in the decree complained of, and it must be reversed, and the cause remanded to the Circuit Court of Culpeper county for such further proceedings therein as may appear necessary and proper, in accordance with this opinion.

REVERSED.