## Richmond.

### UPDIKE'S ADM'R AND ALS. V. LANE.

December 6th, 1883.

1. STATUTE OF LIMITATIONS—*Bonds—Commencement of limitation—War and stay period.*—Bond payable October, 1847, not barred when action brought in 1876. By ch. 149, Code 1849, the twenty years' limitation on bonds executed prior to July 1st, 1850, began that day, and it was suspended during the period from April 17th, 1861, to January 1st, 1869.

2. APPELLATE JURISDICTION—*Decree against distributees.*—Where for debt of decedent there is no decree *in solido* against his personal representative, but severally against each distributee for his proportion of the debt which exceeds $500, substantially it is a decree *against the decedent's estate,* and as it exceeds in the aggregate the minimum jurisdictional sum, an appeal lies from the decree in behalf of the distributees.

3. PRESUMPTION OF PAYMENT.—The common law presumption of payment applies only to cases where twenty years have elapsed after the right of action accrued.

4. IDEM—*Repellable by proof.*—*e. g.* by express admissions within twenty years; by payment of interest or part of principal; obligor's inability to pay; suspension of collection by stay-law or war; and even by near relationship of the parties.

5. PRINCIPAL AND SURETY—*Creditor* loses no right, as against surety, by failing to press collection from principal, unless under Code 1870, ch. 144, §§ 4 and 5, surety shall notify creditor to proceed against principal, and he fails to heed the notice.

6. EQUITABLE JURISDICTION AND RELIEF—*Stale demands and gross laches.* Courts of equity cherish the idea that naught save conscience, good faith and diligence can incite them to activity, and they will not entertain stale demands nor encourage gross *laches.* But in many cases of *apparent laches* the delay is often justifiable.

Appeal from decree of circuit court of Rappahannock county, rendered March 23d, 1881, in chancery suit of John

G. Lane v. the appellants, R. L. Rudasilla, administrator of John Updike, deceased; B. F. Updike, Lewis Bolen and Hannah, his wife; Thomas Harris, Daniel J. Updike, Susan A. Rowles, and the administrator of Eura Updike, and others, defendants.

Opinion states the facts.

*Jas. G. & Wm. W. Field,* for the appellants.

*Marye & Fitzhugh,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

On the 19th day of September, 1846, Henry Miller and John Updike executed their bond to the appellee, Lane, for $825, with interest from the 1st day of October, 1846, and payable one year thereafter. They were neighbors, residing on adjacent farms in Rappahannock county. Miller was a man of large means; Updike comparatively poor. Updike died in January, 1848, leaving personalty barely sufficient to pay his debts, and the owner of 416 acres of land estimated to be worth $5,304, and leaving a widow entitled to dower, and six children, his heirs at law. During the same year, under a decree of court, the land was partitioned, Lane being one of the commissioners. In 1862, Miller, who, a few years before, had changed his residence to Culpeper, died insolvent. In a suit brought in 1866 to settle his estate, Lane filed said bond, and it was reported as a debt due by Miller; but little or nothing was recoverable from that source.

In 1876, Lane instituted this suit in the circuit court of Rappahannock against the administrator and heirs of John Updike, deceased, to subject the land, whereof he died seized, to the payment of said bond. The defendants answered the bill, and, resisting its prayer, relied on the

statute of limitations, the presumption of payment from over twenty-eight years, and the inexcusable *laches* of Lane in neglecting to make the money out of Miller, who, they claimed, was the principal, and their intestate only the surety in the bond.

An account was ordered and taken, which showed that the balance due on the bond was only $348.77, with interest from the 7th day of March, 1857, the principal having been reduced by four payments made by Miller in 1848, 1850, 1856 and 1857, which payments are endorsed on the bond. The account also showed that there was no personalty of Miller or of Updike out of which the debt could be made. Depositions were taken in the suit, chiefly as to the circumstances of said obligors, and especially of the solvency of Miller up to within a few years of his death in 1862. He had large possessions, speculated in cattle, and handled much money, but died insolvent, owing many debts of long standing. On the hearing, the circuit court confirmed the report, to which there were no exceptions, and decreed that the defendants should contribute to pay the debt to the plaintiff, with the costs of suit, in the following proportions, viz: That B. F. Updike, Lewis Bolen and wife, Daniel J. Updike and Susan A. Rowles, each pay $152.73, with interest, respectively, on $69.21, from the 17th day of April, 1877, and $19\frac{8}{10}$ per cent. of the costs; that Thomas Harris pay $133.13, with interest on $60.33, from the 17th day of April, 1877, and $17\frac{3}{10}$ per cent. of the costs; and provided for the sale of the shares of the land of such of the defendants as should fail to pay their proportions aforesaid, within a stated period.

It is, perhaps, proper to notice here, as the reason for reciting particularly the terms of the decree, the contention on the part of the counsel for the appellee, that the appeal should be dismissed for want of jurisdiction, there being no decree against John Updike's adm'r, and the separate

recoveries against each of the defendants, his heirs, being for less than the sum of $500.

As to the point thus raised, it is sufficient to say that though there is not a decree against the administrator *in form*, yet in *substance* it is as much a decree against the decedent's estate, and for the full amount, $768.67, then due on his bond, as if the decree had been for that sum *in solido*, the apportionment being specified in the decree for mere convenience. Equity regards the substance and not the form.

From this decree the defendants appealed, and as grounds of error assign that the court below erred in disregarding their said defences: (1) the statute of limitations, (2) the presumption of payment arising from lapse of time, and (3) the inexcusable *laches* of the creditor.

There is but little difficulty in disposing of these assignments of error.

As to the *first*, it is only necessary to refer to certain well known facts and principles. The bond of Miller and Updike was executed in 1846, and became payable in 1847. There was then in this Commonwealth no statutory limitation to actions on contracts under seal. A limitation of twenty years was imposed as to such instruments by the Code of 1849, which went into operation the 1st of July, 1850; and as to contracts under seal, executed before that day, the time was to be computed from the 1st of July, 1850. See Code 1873, ch. 146, §§ 8 and 22; Code 1849, p. 800, § 1.

In making the computation of the time, the war and the stay-law periods—that is, the period between the 17th of April, 1861, and the 1st of January, 1869—must be deducted. See *Brewis and als.* v. *Lawson and als.*, 76 Va. 36, and cases there cited. Thus counting, there has run against the bond less than the statutory period of limitations by nearly three years.

As to the *second*, the same answer would seem to be sufficient; because it has been decided that the common law rule of presumption of payments only applies to cases where twenty years have elapsed after the right of action accrued. Here, calculated in the manner allowable under the decisions of this court, the requisite lapse of time does not exist for the application of the presumption. *Booker's Adm'r* v. *Booker's Reps.*, 29 Gratt. 605; *Hall* v. *Pack's Ex'ors*, 10 W. Va. Rep. 145; 2 Barton's Ch. Practice, 86. But if, as to such rule of presumption, such mode of calculation of time were not allowable, still there is a pertinent and complete answer to this assignment of error. The presumption may be repelled by satisfactory evidence of any kind whatever to the contrary. For example: by the obligor's express admissions, within the twenty years, that the debt was unpaid; by his implied admissions to that effect, from paying interest, or part of the principal, which fact is provable by extrinsic evidence, or even by co-tempo-raneous endorsement by the obligee himself; or by showing the obligor's inability to pay during that period; or by suspension of power of collection by stay-law, or by war; or even by the near relationship of the parties. *Carll* v. *Hart*, 15 Barbour, 567; *Dabney's Ex'or* v. *Dabney's Adm'r*, 2 Rob. 650; 2 Minor's Institutes, 758; 4 Ib. 502: 1 Rob. Pr. (2d ed.), 622; *Hutsonpiller* v. *Stover*, 12 Gratt. 579; *Erskine* v. *North*, 14 Gratt. 60. These rules obtain as well in courts of equity as at law.

In the case under consideration, abundant evidence exists to repel any presumption of payment which even the lapse of the long period of twenty-eight years between the execution of the bond in 1846, and the institution of the suit in 1875 might tend to create. A mere suggestion of the items is enough.

The death of Updike, leaving a numerous family in moderate circumstances, within four months after the ma-

turity of the bond; the speculative habits of Miller, which needed all his means in his cattle trading; his ultimate insolvency and death in 1862, leaving many debts of long standing unpaid; the flagrancy of the war; the pendency of the stay-law; the attempt of Lane, in 1866, to make the money out of Miller in the suit of his creditors to settle his estate; and lastly, the close neighborship and probable friendship of the parties. But, in addition, the most conclusive fact of all is the four partial payments by Miller and the co-temporaneous endorsement thereof on the bond; and the entire absence in the depositions in the case of all evidence tending to prove payment, except the circumstance that the bond was not presented for payment to the administrator of Updike, and that Miller continued in a financial state which enabled him to have paid it up to a few years before his death.

And, finally, as to the *third:* What has been said in answer to the *second,* is a sufficient answer to this assignment.

But it is argued by counsel for the appellant that a creditor will not be permitted to recover of *a surety* money which, by reasonable diligence, he could have recovered of the principal debtor, but which, by his neglect, cannot now be recovered, from loss of evidence, death of parties, insolvency, &c. Premising that the record in this case nowhere establishes the fact that the relation of principal and surety existed between Miller and Updike, attention may be called to the fact that our statute extends to sureties ample protection in cases where undue indulgence is given by the creditor to the principal debtor. See Code 1873, ch. 144, §§ 4 and 5. Moreover, it is well settled that the estate of the principal must be exhausted before a court of equity will allow the estate of the surety to be touched. *Horton* v. *Bond,* 28 Gratt. 825.

It is true, as contended by counsel for the appellant, that courts of equity do cherish the familiar principle

that nothing save conscience, good faith and diligence can call them into activity; and that they will not entertain stale demands, nor encourage gross *laches*. But it is undeniable that in many cases of apparent *laches*, such as this, where the creditor is alleged to have slept over twenty-eight years on his rights, there may be ample excuses which palliate, and even justify the delay. And this is such a case. The circumstances disclosed by the record, as herein before referred to, form, in the judgment of this court, excuses ample and complete to justify the apparent neglect and delay of the creditor. We are therefore of opinion there is no error in the decree appealed from, and the same must be affirmed with costs to the appellee.

DECREE AFFIRMED.