## Richmond.

ALEXANDER v. BYRD AND AL.

January 24th, 1889.

1. JURISDICTION—*Appealable decrees.*—In suit to enforce upon decedent's lands in possession of his heirs, claims against his estate, an interlocutory decree that the claims are outstanding, not barred by statute of limitations or *laches*, and that the lands are liable therefor, adjudicates the principles of the case and is appealable.

2. IDEM.—Where amount, adjudged to complainant as due from decedent as co-surety, may be shown by commissioner's enquiry and report to be less than the minimum jurisdictional limit, by reason of his co-surety having paid more than his share, and being entitled, by way of contribution, to a part of the debt, such fact does not defeat the jurisdiction of this court.

3. STATUTE OF LIMITATIONS—*War and stay periods.*—As to bonds payable before July 1, 1850, statute of limitations begins to run that day. The war and stay-law periods must be excluded in computing the twenty years necessary to bar such bond.

4. SHERIFF'S RETURN—*Extra-official—Evidence.*—What sheriff adds to his official return is extra-official, and is not even *prima facie* evidence of any fact so stated.

5. PRINCIPAL AND SURETY—*Release of co-surety.*—Release of levy of execution upon property of surety will not release co-surety, as they are joint principals as respects each other and the principal.

6. IDEM—*Laches—Case at bar.*—Where creditor received payments until 1868, when payments ceased, he got judgment and had execution issued and levied. He died in 1872. In 1874 assignee brought suit to enforce the claim against debtor's lands;

HELD:

No *laches* in point of fact.

7. IDEM—*Definition—Notice to sue.*—*Laches* is neglect to do something that a party should do, and mere lapse of time, unaccompanied by some circumstance affording evidence of abandonment, is not considered

*laches.* Besides, surety can never charge creditor with *laches* until he has in vain notified him to pursue principal under sections 4 and 5, ch. 143, Code 1873.

8. REALTY OF DECEDENT—*Liable for debts—Dower.*—After exhaustion of decedent's personalty, his lands in possession of his heirs or devisees are liable for his debts, but not his land in possession of his widow as her dower during her estate therein.

Argued at Staunton, decided at Richmond. Appeal from decree of circuit court of Clarke county, rendered on the 6th of February, 1883, in the chancery cause wherein Margaret Byrd, assignee of R. E. Byrd's administrator, was complainant, and John Alexander, administrator of W. C. Alexander, deceased, and J. H. and W. R. Alexander, and Bettie M. Grigsby and Mary A. Brubaker, the only children and heirs-at-law of the decedent, were defendants.

The case is as follows: R. E. Byrd held the bond of D. W. Sowers, as principal, and F. J. Kerfoot and W. C. Alexander, as sureties, dated April 18th, 1849, for $2,036.10, payable on demand. Alexander died intestate in 1850, leaving a widow and the four heirs aforesaid, and considerable real and personal estate, and no debts except his liability as security on said bond. His personal estate was distributed, and his realty partitioned according to the statute. R. E. Byrd died in 1872. During his life he had received from the principal in said bond the interest up to April 18th, 1853, and $1,000 January 9th, 1854; $150 November 16th, 1858; $103 January 1st, 1866; $100 January 1st, 1867; and $50 January 10th, 1868. Before his decease R. E. Byrd obtained judgment against the surviving obligors in May, 1869, for the amount of the bond, subject to the said credits. And after his death his administrator assigned the bond to his widow, Margaret Byrd, as part of her distributive share of the estate. In 1874 she instituted this suit, setting forth the foregoing facts, and that execution on said judgment had been issued and returned "no property," and that the said bond remained wholly unpaid except as to said credits, and prayed for a settlement of the accounts of John Alexander as

administrator of W. C. Alexander, deceased, and that the realty of the decedent be subjected to the payment of said bond and all other debts against his estate, and for general relief. And with her bill was filed as an exhibit the said execution, to which is attached the following return:

"F. J. Kerfoot,

"Levied ex'on on his cattle and hogs, corn and three head of sheep, on carriage and harness. By order of Byrd & Huck, att'ys, ex. is returned to the office to lie until further orders.

"JOHN W. BRUNER, Sheriff."

The defendants, Bettie M. Grigsby, Mary A. Brubaker, and W. R. Alexander, separately demurred to and answered the bill. They admitted that their father died intestate, leaving considerable estate, real and personal, and a widow and themselves and J. H. Alexander as his only children and heirs-at law, and also the distribution of the personalty and partition of the realty as alleged in the bill. But they deny all knowledge of the execution of the said bond by him, and insist that the complainant has been guilty of such gross *laches* in the assertion and prosecution of her claim as to debar her from relief against these respondents and their co-defendants in a court of equity; that the administrator had had in his hands more than sufficient personal assets to pay all of his intestate's debts, and that, if he had notice of this debt, the lapse of time effectually bars any recovery on his official bond; that one-third of the personalty was paid by the administrator to the intestate's widow, which was sufficient to have paid the complainant's debt; that J. H. Alexander and Bettie M. Grigsby had aliened their shares of their father's land, except their interest in remainder in the portion thereof assigned to the widow as her dower.

The administrator having died soon after the institution of this suit, he did not answer, and the cause was revived as against his committee administrator *de bonis non*, John T. Crow—D. W. Sowers and F. J. Kerfoot, having been adjudicated bankrupts before suit brought, were not made parties.

The cause having been matured, the circuit court, at its October term, 1875, entered a decree referring it to one of its commissioners with directions that he ascertain what debts were owed by W. C. Alexander at his death; who were his heirs; the portion of said debts which will have to be paid by each of them, and the present status of said lands; also that he settle the accounts of the said decedent's administrator, and ascertain what personalty there may be applicable to said debt. The account was accordingly taken and was returned February 4th, 1876. It appeared thereby that the only liability on the decedent's estate was the amount remaining unpaid on the bond of D. W. Sowers, which was the sum of $2,211.89, with interest on $1,124.58, part thereof, from February 22d, 1876, till paid; that he owned four hundred and sixty-five acres of land of the fee simple value of $9,300, and of the rental value of $800; that his heirs-at-law are those mentioned in the bill; that the land was divided equally among the four heirs, subject to the dower of the widow, and is still owned by them, and that each of them is liable for one-fourth of said debt; that the personal property which came to the hands of the administrator was distributed among the widow and heirs, and that it is impossible at present to trace it; that none came to the hands of the administrator *d. b. n.*, and that he cannot ascertain any applicable to said debt.

To this report the defendants filed five exceptions: (1) That the complainant's debt is barred by *laches;* (2) that they are held liable for payment of the entire balance of said debt, when it is shown by papers in the cause that half of it has been paid by Kerfoot, the co-surety; (3) that the widow is not held liable for any part of said balance; (4) that interest is allowed on the debt during the war; and (5) that complainant is not entitled to recover against defendants because of gross negligence and *laches* in asserting and prosecuting her claim until irreparable damage would be sustained by them, by reason of her giving time and abandoning her right against them.

By a report of the master made and returned May 13th, 1880, pursuant to another decree, it appeared that D. W. Sowers and F. J. Kerfoot were both solvent up to 1869, and that $1,275.60 of the personalty was distributed to the widow of W. C. Alexander; and by another report filed November 5th, 1880, it appeared that the sum of $637.80 was distributed to each of the four children.

And the cause coming on, February 6th, 1883, to be heard again on the papers formerly read, the demurrers and answers aforesaid, and general replications thereto, the petition of E. W. Berkeley, administratrix of Julia Berkeley, deceased, filed by leave of the court, the several reports of the master, and the exceptions thereto, together with the evidence filed therewith, when the circuit court decreed that exceptions 1, 3, 4 and 5 be overruled, exception No. 2 not being then acted upon. And the decree reciting that it appearing that the whole personal estate of W. C. Alexander, deceased, being exhausted, there is nothing in the hands of the personal representative applicable to the unpaid debts of the intestate, the court decreed that the real estate descended from the intestate to his heirs is liable to the payment of said debt, the same to be paid in equal portions by the said four heirs holding said real estate, but if any of said heirs have aliened his or her share thereof, he or she is personally liable for his or her equal portion of said debt; with the right, however, of the creditor to revert to the unaliened land in case the personal decree proves unavailing; and it further appearing that the debt of the complainant is the only unpaid debt of the intestate, the court further declared its opinion that the obligation of the said debt upon said heirs was not barred by the statute of limitations, and that there had not been any such *laches* in its assertion and prosecution as would prevent its recovery; but that it not sufficiently appearing how much of said debt was then due and unpaid to the complainant, and whether the co-surety, F. J. Kerfoot, had paid more than his share of the common liability, and whether on that amount his

creditor, E. W. Berkeley, administratrix, etc., will be entitled by way of contribution to receive any portion of it on her debt, made a reference to a master necessary; and accordingly the decree referred the matter to a master to ascertain and report upon said points and others. From this decree the said heirs, without awaiting the return of the report thereby directed, obtained an appeal and *supersedeas*.

*J. J. Williams*, for appellant.

*M. McCormick*, and *Byrd & Huck*, for appellee.

RICHARDSON, J. (after stating the case as aforesaid), delivered the opinion of the court.

The question to be first considered is that raised by the appellee's objection that the decree appealed from is not final, nor such an adjudication of the principles of the case as will allow an appeal.

It is certainly true that the decree appealed from was not a final decree. The established definition of a final decree is a decree that ends the cause, so that no further action of the court in the cause is necessary. *Battaile* v. *Maryland Hospital*, 76 Va. 63.

It is clearly an interlocutory decree only. It is equally clear that it does not dissolve an injunction, or, *in terms*, require money to be paid, or the possession or title of property to be changed. But does it not adjudicate the principles of the cause? If so, then an appeal lies. Code 1873, ch. 178, § 2.

The master reports the complainant's debt as an outstanding debt against the estate of W. C. Alexander, deceased, and fixes the amount. His heirs, the defendants, except to the report; the decree adjudges that the debt is an outstanding valid debt, not barred by the statute of limitations, nor by *laches* in its assertion and prosecution; that there is nothing in the hands of

the intestate's personal representative applicable to its payment; that the intestate's real estate descended to his heirs, the defendants, is liable for its payment in equal parts by the heirs now holding it, specifying all four by name; but that if any have aliened they are personally liable for their share of said debt, with the right in the creditor to resort to the unaliened land in case a personal decree proves unavailing.

These are the questions concerning which the main controversy is raised by the exceptions, and which the court, by the decree complained of, decided adversely to the claim of the defendants, and to their rights as they contend. *Reed* v. *Cline's Heirs*, 9 Gratt. 136, was an appeal from an order directing an issue out of chancery, and it was objected by the appellees that the order was interlocutory and that the appeal was premature. But this court, holding that the decree settled the principles of the case in deciding that the statute of limitations and the staleness of the demand were not sufficient defenses, was of opinion that the court might take cognizance of the appeal. And that decision is cited with approval by Anderson, J., pronouncing the opinion of this court in *Elder* v. *Harris*, 75 Va. 71, 72.

In *Garrett* v. *Bradford*, 28 Gratt. 609, there was a decree which overruled certain exceptions to a commissioner's report, and confirmed the report as to the questions involved in the exceptions. This court held that to be a decree that settled the principles of the cause as to the questions thus raised, and from which the party excepting might appeal, although the report is recommitted to the commissioner as to other matters involved in other exceptions. These authorities are deemed decisive of the question of jurisdiction, even if it was not so evident that the decree here appealed from is plainly within the meaning of the statute above referred to, which allows appeals from interlocutory decrees that "settle the principles of a cause."

Nor is there anything capable of impairing the jurisdiction to sustain this appeal in the suggestion of the appellee that the amount of the debt due *her* from W. C. Alexander's estate may

fall short of the minimum jurisdictional limit of $500, according to the report which may be made by the master under that part of the decree complained of, which, reciting that it not sufficiently appearing in the record how much of said debt is due and unpaid to the complainant, and whether the co-surety, F. J. Kerfoot, has paid more than his proper share of the common liability, and whether on that account his creditor, E. W. Berkeley, administratrix, will be entitled by way of contribution to recover any portion of said debt, on the debt coming to her as such administratrix, directs said master to take an account of the said matters and of others. Because the amount, for which the liability of the defendants as holders as heirs of the intestate's lands has been adjudicated by the said decree, will remain the same, and be for an amount much more than sufficient to meet the jurisdictional requirement as respects this court, it matters not to whom it may be payable. And it is from the decree imposing that liability that this appeal has been taken.

Having thus determined the contention as to the question of jurisdiction in favor of the right of appeal in this case, we next proceed to consider the errors assigned by the appellants to the decree complained of.

The first assignment is, that the court below erred in overruling the defendant's plea of the statute of limitations, and their defenses of presumption of payment and of *laches* in asserting and prosecuting the claim sued on.

The statutory bar of twenty years has no application to the bond in this case. Previous to July 1st, 1850, there was in this State no limitation to suits upon instruments under seal. Therefore, here the statute began to run on that day, and excluding from computation the war and stay-law periods, to-wit: from April 17th, 1861, to January 1st, 1869, it is evident that when this suit was instituted, April 29th, 1874, the twenty years had not expired. *Brewis* v. *Lawson,* 76 Va. 36.

The common law presumption of payment applies only to cases where twenty years have elapsed after right of action

accrued.   *Updike* v. *Lane*, 78 Va. 132.   But it is contended that
the execution that was issued on the judgment against Sowers
and Kerfoot, the surviving obligors of this bond, in December,
1869, was levied on certain property, and that in January, 1870,·
the levy was released and the execution ordered to be returned
to the office to lie until further orders by direction of the plain-
tiff's attorneys, and that no further steps were ever taken to
enforce this judgment, and that under these circumstances a
presumption arises that the claim was satisfied.   There is, how-
ever, no proof in the record of the release of this levy except
the addition to the return of the sheriff to the effect that the
execution was returned to the office, there to lie until further
orders, by direction of the attorneys of Byrd.   This court held,
in *Shannon* v. *McMullen*, 25 Gratt. 211, that such pretended·
additional return is not conclusive nor even *prima facie* evidence
of the fact stated therein.   And this is because so much of the
return was outside of and beyond the sheriff's official duty.
But upon inspection of the return of the levy, which is above
stated in full, it will appear that the property levied on was not
the property of the principal, Sowers, but was the property of
the co-surety, Kerfoot.   Such release of the levy upon the prop-
erty of the principal might, indeed, have released his sureties.
But the release of the co-surety's property would not have that
effect, as both co-sureties, Alexander and Kerfoot, were, as
respects each other and the creditor, also joint principals.
*Legrand* v. *Rixey*, 83 Va. 876 ; Code 1873, ch. 142, § 14.

As to *laches*, the evidence establishes that R. E. Byrd con-
tinued to receive payments from Sowers up to 1868.   When
these payments ceased he got judgment, had execution issued
and levied.   He died in 1872.   In 1874 Margaret Byrd, as
assignee of the bond, instituted this suit against W. C. Alexan-
der's administrator and heirs, on the idea that the judgment
was unavailing on account of the insolvency of Sowers and
Kerfoot.   There certainly is, as a matter of fact, no *laches* or
abandonment of the claim in this course of proceeding.   For,

as this court held in *Coles* v. *Ballard,* 78 Va. 139, "*laches* is the neglect to do something which a party ought to do ; and mere lapse of time, unaccompanied by some circumstances affording grounds for a presumption that the right has been abandoned, is not considered '*laches.*' And claims are considered 'stale' only where gross *laches* is shown with unexplained acquiescence in the assertion of an adverse right." And also "that a surety can never charge a creditor with *laches* until he has in vain prompted the creditor to pursue the principal. The creditor need not move until he has been notified under §§ 4 and 5, ch. 144, Code 1873; and that the same is true as to the sureties, heirs and distributees." And the ruling of this court in the parallel case of *Updike* v. *Lane, supra,* is to the same effect.

The second assignment is, that the court below erred in deciding that the real estate descended from W. C. Alexander upon his heirs was liable to be subjected to the payment of this claim.

To demonstrate the fallacy of this position, it is only neces-sary to call attention to the instrument, dated April 18th, 1819, whereby D. W. Sowers, F. J. Kerfoot, and W. C. Alexander became bound for the payment of $2,036, on demand, to R. E. Byrd, and to certain well known principles of law. This instru-ment is under seal, and expressly binds the heirs of the obligors. At common law an estate taken *by descent* subjects the heir to pay, to the extent of the value of the land, all the debts of the ancestor due by any contract of record (*e. g.,* a judgment or recognizance), or any contract of specialty ; that is, *under seal,* which *expressly binds the heirs.* 2 Bl. Com. 201, n. 2 ; Id. 243–4 ; 1 Lom. Dig. 773–4 ; *Piper* v. *Douglass,* 3 Gratt. 354 ; 2 Minor's Inst. 451–2. The act of March 1st, 1842, was the first statute of this State making real estate assets for the pay-ment of simple contract debts. That act, however, was subject to a proviso declaring that no debt not evidenced by writing, signed by the debtor, or some person legally empowered by him,

shall be charged on the real estate by virtue of this act. This proviso was omitted at the revisal of 1849, so that, as the law now stands, the real estate is subject to the payment of all the just debts of the decedent without qualification. Acts 1841–'2, p. 55; Code 1849, ch. 131, § 3; Code 1873, ch. 127, § 3. It is manifest that the lands of the intestate in the hands of his heirs was bound for the payment of this bond at common law and independent of statute.

In *Pugh* v. *Russell*, 27 Gratt. 789, land in possession of devisees was subjected to a debt of testator under a suit instituted long after his death, after his estate had been settled and distributed, and after a portion of the land had been aliened. Testator left realty and personalty. The latter had been exhausted by the administrator, who committed a *devastavit*. Long after the *devastavit* and exhaustion of the personalty, suit was brought by Russell, a creditor of the testator, to subject his realty in the hands of his devisees. One of the devisees had aliened his share. This court subjected the unaliened land to the payment of the debt. In the opinion it was said that where there is in the case material for a just apportionment of the debts among the devisees, such apportionment should be made with a reservation to the creditors of a right to resort to the others in case of a deficiency. To the same effect are the cases of *Lewis* v. *Overby*, 31 Gratt. 601, and *Ryan* v. *McLeod*, 32 Gratt. 367.

The personalty being first liable to the payment of a decedent's debts, it is true that there should be no distribution either to the widow or to the other distributees until the debts are paid, and there can be no resort for their payment to the realty until the personalty has been exhausted. But when that has been exhausted either by *devastavit* or distribution, the realty in the hands, not of the widow, because she takes and holds her life estate in one-third thereof by a title which is paramount to the rights of creditors, but that of the heirs must be subjected to the

payment of the ancestor's debts. They, and not she, are in possession of something to which the creditors have a better right, and must refund. And so it is obvious that there is no merit in the objection, that the decree holds the heirs and not the widow liable for the debt of W. C. Alexander, deceased.

We find no error in the decree complained of, and it must be affirmed.

DECREE AFFIRMED.