## Richmond.

TUNSTALL'S ADM'R v. WITHERS & ALS.

MAY 8th, 1890.

Absent, Lacy, J.

1. SHERIFF-ADMINISTRATOR—*Sureties—Liability.*—Where estate is committed to sheriff, he must proceed with the administration till completed, and he and his sureties are liable, and suits to recover the assets must be in his name, though his official term be ended.

2. VENDOR'S LIEN—*Suits to enforce—Parties.*—Though original vendee has aliened land conveyed to him with lien for purchase money reserved, yet he must be a party to any suit to enforce the lien.

3. IDEM—*Statute of limitations—Presumption.*—Though action at law to recover purchase money be barred, yet suit in equity to enforce the vendor's lien is not affected by any time insufficient to raise presumption of payment. Code, sec. 2935.

4. IDEM—*Presumption of Payment.*—A debt lying dormant and unrecognized for twenty years is, without evidence to the contrary, presumed by law to be paid, and such presumption may be formed from circumstances coupled with lapse of a shorter period.

5. IDEM—*Laches—Case at bar.*—Here land was conveyed, with vendor's lien reserved, in 1860, and suit to enforce the lien brought in 1886, the war and stay period being eliminated, and the circumstances of the case considered : *held,* the vendor's lien is not affected either by the statutes of limitation or by any presumption of payment; nor does the delay constitute *laches.*

6. WITNESSES—*Incompetency—Case distinguished.*—Where one party to contract is dead, the other, being a party to suit and liable for costs, though a discharged bankrupt, is not competent to testify. *Reynolds* v. *Callaway,* 31 Gratt., 436, *distinguished.*

Appeal from decree of corporation court of Danville rendered March 11, 1889, in the cause of Joseph D. Blair, admin-

istrator *de bonis non* of W. H. Tunstall, deceased, complainant (appellant here), against E. D. Withers and others, defendants, the object of the suit being to enforce a vendor's lien.   Opinion states the case.

*Guy & Gilliam* and *Peatross & Harris*, for the appellants.

*Berkeley & Harrison*, for the appellees.

Lewis, P., delivered the opinion of the court.

This suit was brought by the appellant as the administrator *d. b. n.* of William H. Tunstall, deceased, the vendor, and was commenced in July, 1886.   The land was sold and conveyed by Tunstall to the appellee, Withers, in July, 1860, the consideration therefor being one thousand dollars, of which one-third was paid in cash, and for the residue a lien was reserved on the face of the deed.   There was no other written evidence of the debt, except that it was charged on Tunstall's books.

In 1858 Tunstall, who for many years had been clerk of the circuit court of Pittsylvania county, moved from Virginia to the state of Mississippi, and died intestate in the latter state in December, 1863.   It does not appear that he returned to Virginia after his removal from the state but once, and that was before the commencement of the late civil war, presumably just before the execution of the deed, which was acknowledged in Mississippi.   After the recordation of the deed, Withers conveyed the land to one Hatcher, and, as the property of the latter, it was sold under a decree of the said corporation court in a creditor's suit, which was brought some time before the institution of this suit, and in the progress of which the existence of the lien in question was discovered.   This discovery was made known to the appellant only a few weeks before the present suit was commenced.

At his death Tunstall left surviving him three children of

tender years, aged respectively two, seven and twelve years. The eldest died in Mississippi about the time he attained his majority; the others have never been residents of this state. The estate was unrepresented in Virginia until the 20th of August, 1866, when it was committed by the county court of Pittsylvania county to C. L. Powell, sheriff of that county, whose powers were revoked in November, 1868, and the estate was again unrepresented until the 16th of May, 1870, when it was committed to the appellant, who at that time was sheriff of the said county, and whose powers have never been revoked, although his term of office as sheriff has long since expired. It does not appear that Powell ever had knowledge of the existence of the lien.

The bill sets forth, substantially, the foregoing facts, and then, by way of explanation of the delay that has occurred in asserting the claim, proceeds as follows:

"The death of your orator's intestate in a remote state, and during the war, and the long intervention of the stay law thereafter, and the fact that his heirs were young children at the date of his death, and the further fact that he never had an opportunity of inspecting the books and papers of his intestate, and no personal interview with the heirs or home representative, cut him off from all information touching the claim herein asserted, until recently, when it was brought to his attention by parties investigating the title to said land, with a view to purchasing it. Inquiries were thereupon instituted by your orator, the result of which satisfy him that the debt has not been paid, and is a subsisting lien on the land," etc.

And the prayer of the bill is that Withers and Hatcher and the purchasers at the judicial sale above mentioned, be made defendants to the suit; that the land be sold to satisfy the lien, and for general relief. Answers under oath, however, are expressly waived in the bill.

The defendants, except Hatcher, answered the bill setting up the following defenses, viz: (1) That the appellant could

not maintain the suit, because his term of office as sheriff had expired; (2) that, in any event, the proper remedy was by petition in the creditor's suit against Hatcher, and not by a separate and independent suit; (3) the statute of limitations; (4) actual payment of the debt; (5) presumption of payment from lapse of time; and (6) *laches* in asserting the claim.

Depositions were taken, and when the cause came on to be heard, the bill was dismissed by the decree complained of.

We will consider the points relied on by the appellees, the defendants below, in the order in which they have just been stated.

1. The first is clearly without merit, for, as the statute makes no provision for transferring an estate committed to a sheriff for administration to his successor in office, he must proceed with the administration till completed, whether his official term has ended or not, and for an abuse of the trust, his securities, as well as himself, will be liable. This is well settled. 1 Lom. Ex'ors, 146; *Dabney's Adm'rs* v. *Smith*, 5 Leigh, 13; *Tyler* v. *Nelson*, 14 Gratt., 214.

2. And the second ground of defense is equally untenable. The debt sought to be enforced in this suit is not due by Hatcher; and as Withers is a necessary party to any suit to enforce the lien reserved therefor, the only proper way of proceeding was that adopted, namely, by an independent suit.

3. Nor is the case affected by the statute of limitations. In the leading case of *Hanna* v. *Wilson*, 3 Gratt., 232, it was decided that, although an action at law to recover the purchase money was barred by the statute, yet that the right to maintain a suit in equity to enforce the vendor's lien on the land could not be affected by any lapse of time short of the period sufficient to raise the presumption of payment, and the present case is within the principle established by that decision.

The appellees, however, attempt to distinguish that case from this on the ground that there the vendor had not parted with the legal title. But we perceive no principle for any such dis-

tinction, and the case of *Coles* v. *Withers*, 33 Gratt., 186, is an express authority to the contrary. In that case it was held that a vendor's lien, reserved on the face of the deed, is not less valid and effectual as a security than a mortgage, and that both are governed by substantially the same principles. Indeed, said the court, it may be a question whether the reserved lien is not of a higher nature than the mortgage, since the latter, in many cases, is treated as a mere incident to the debt, whereas the former is an express charge, inherent in its nature, upon the land, which, in equity, is the natural and primary fund for its payment; and there are numerous cases to the same effect. *Paxton* v. *Rich*, 85 Va., 378, and cases cited.

The doctrine, therefore, as to the distinction between the personal liability of the vendee for the purchase money, whether evidenced by writing at all or not, and the security furnished by a vendor's lien on the land itself, is too well established in this state to be questioned. In *Bowie* v. *Poor School Society of Westmoreland*, 75 Va., 300, it was insisted that the debt secured by the deed of trust was barred by the statute of limitations, as there was no express promise to pay contained in the deed, and the debt itself was not evidenced by bond or other written instrument, and, therefore, that the lien was not enforceable. But in reply to this the court said the creditor was not seeking a recovery of the debt by an action at law, and that the personal obligation of the debt was one thing, and the lien for its security another; and that the lien was enforceable in equity, although the remedy at law was barred.

4. As to the next point, namely, that the debt has been actually paid, there is no proof whatever. The only evidence offered on the subject was the deposition of Withers; but he, although discharged in bankruptcy before the present suit was commenced, is not a competent witness in the case, as Tunstall, the other party to the transaction under investigation, is dead. The admissibility of his evidence is contended for on the ground that, as his liability for the debt in question has been discharged,

he is not testifying "in his own favor," and *Reynolds* v. *Calla-way*, 31 Gratt., 436, is relied upon. But that case is not in point, for there the discharged bankrupt was not a party to the suit, whereas here he is; and hence, although he is not interested in that which is the subject of the suit, yet he is interested at least to the extent of the costs, and that is sufficient to disqualify him. 1 Greenl. Ev., sec. 391; Code, sec. 3346.

But if the objection were waived, and if his deposition, which was not excluded by the court below, were read, the result would be the same, as we shall presently see.

5. The next, and more important question, relates to the presumption of payment. It is an acknowledged principle that a debt which has lain dormant, and without recognition, for twenty years, is, in the absence of satisfactory evidence to the contrary, presumed by the law to have been paid. And this principle is recognized by courts of equity in suits to enforce deeds of trust, mortgages and vendors' liens (and see Code, sec. 2935). Payment, however, may be inferred from circumstances coupled with the lapse of a shorter period than twenty years. *Booker* v. *Booker*, 29 Gratt., 605; *Snavely* v. *Pickle*, *Ib.*, 27; *Updike* v. *Lane*, 78 Va., 132; or, as Greenleaf expresses it, "The jury may infer the fact of payment from the circumstances of the case within that period; but the presumption of *law* does not attach till the twenty years are expired." 1 Greenl. Ev., sec. 39.

In the present case it does not appear that any credit was given for the payment of the purchase money, and we must, therefore, assume that the whole of it was payable upon the consummation of the sale, which was nearly twenty-six years before the present suit was commenced. In the computation of the time, however, to be taken into consideration, the period of the war and the time during which the stay law was in force is to be deducted (*i. e.* the period between the 17th of April, 1861, and the 1st of January, 1869), and making that deduction, the suit was commenced within less than twenty years

from the time the debt became due, by one year, eight months and twenty-eight days.

By the seventh section of the act of March 3d, 1866, commonly known as the stay law, it was expressly enacted that "the period during which this act shall remain in force shall be excluded from the computation of time within which, by the operation of any statute or *rule of law*, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy;" and the present case is within the operation of this statute. For the presumption just adverted to is a rule of law, although it is sometimes spoken of as a rule of evidence, and, as contradistinguished from a rule of pleading, so it is; that is to say, it differs from the bar imposed by the statute of limitations in this: that the one prohibits the action, the other *prima facie* obliterates the debt. But all presumptions of law are nothing but rules of law, and are recognized as such by the authorities.

Thus, says Starkie, "artificial presumptions, made by the law itself, are not in general used as rules of evidence for the purpose of ascertaining doubted facts, but are, in effect, mere arbitrary *rules of law*, which, according to the policy of the law, operate in some instances conclusively, and which in other instances again, where a peremptory and absolute operation would be attended with inconvenience, may be answered and rebutted." 3 Stark. Ev., marg. p. 1241. See, also, 1 Greenl. Ev., secs. 14, 17, 39.

The question, then, is, Do the circumstances of the present case, coupled with the lapse of a shorter period than twenty years, warrant the inference of payment? We think not. On the contrary, they are ample to repel the presumption of payment, had that presumption attached before the suit was brought.

It appears from the record that Tunstall continued a resident of Mississippi from the time of his removal to that state, in 1858, until his death, in 1863; that communication between

that state and Virginia was much interrupted by the war; that he was not in Virginia during the war; that he never saw Withers after the sale was made; that the deed, although executed and acknowledged in July, 1860, and presumably delivered on the day of its date (*Raines* v. *Walker*, 77 Va., 92), was not recorded until the 21st of November, 1861, at which time, the presumption is, the lien reserved on the face of the deed was still subsisting (as, indeed, Withers himself testifies that it was); that Tunstall was " a moneyed man," and a lenient creditor; that he was the owner of property in Virginia until his death, and that there was money to his credit in the Pittsylvania Savings Bank at the close of the war, although he had then been dead nearly eighteen months; that the debt in question was well-secured; that he was averse to receiving Confederate money; that his heirs, at the time of his death, were of tender years; that there was no representative of the estate in Virginia until August, 1866, when the estate was committed to Powell, the then sheriff of Pittsylvania county, whose powers were subsequently revoked; that the debt was not paid to Powell, nor does it appear that he ever heard of it; that the only written evidence of the debt, except the deed, was the charge on Tunstall's books, which books were never in the hands of the Virginia administrators; and that the appellant had no knowledge of the debt until just before the suit was brought.

It appears, moreover, that when the deed reserving the lien was recorded, Withers was insolvent, and that he so continued until his discharge in bankruptcy, several years after the war. Nor does he say in his deposition that he paid the debt; he simply says he *believes* he paid it. But he produces no receipt or release, and does not claim to have had any; and when asked to state why he believed the debt was paid, he answered: " First, because there was no bond standing against me; and, secondly, because Mr. Tunstall, as a business man, would not

have neglected to take a bond. I know no other reason. *That will do."* But *we* are of a different opinion.

6. Upon the subject of *laches* little need be said. It is undoubtedly true that a court of equity will refuse its aid to enforce stale demands, where the party has slept upon his rights and acquiesced for an unreasonable length of time. This principle has been recognized in numerous cases by this court, and is no less salutary than well settled. But, as was pointed out in *Coles* v. *Ballard,* 78 Va., 139, mere delay is not always to be considered *laches.* To constitute inexcusable *laches* the delay must have been such as to afford a reasonable presumption of the satisfaction or abandonment of the claim, *or* such as to prevent a proper defense by reason of the death of parties, loss of evidence, or otherwise. So that whether the lapse of time is sufficient to bar a recovery, must, of necessity, depend upon the particular circumstances of each case. *Tazewell's Ex'or* v. *Saunders,* 13 Gratt., 354; *Rowe* v. *Bentley,* 29 *Id.,* 756; *Terry* v. *Fontaine,* 83 Va., 451.

We have already shown that the circumstances of this case are not such as to warrant a presumption of abandonment or satisfaction of the claim, nor has there been such lapse of time or loss of evidence as to produce danger of doing injustice. On the contrary, the transaction in question has not become obscure; the sum sought to be recovered is not uncertain, and the evidence to enable the court to do justice between the parties is ample.

The case is a stronger one for relief than the analogous case of *Updike* v. *Lane,* in which relief was granted, although the suit was not commenced until after the expiration of more than twenty-eight years after the debt fell due. And in that case, among the circumstances enumerated by the court as material to be considered in connection with the defense of *laches* and presumption of payment from lapse of time, were insolvency of the debtor and the suspension of legal remedies, both of which, as we have seen, concur in the present case.

So in *Rowe* v. *Bentley*, 29 Gratt., 763, Judge Burks, in pronouncing the judgment of the court, said : "The delay in this case is sufficiently accounted for by the occurrence of the war and the obstructions occasioned thereby; the partial suspension of legal remedies; the disabilities under which the claimants labored, and the lack of knowledge of their rights. Acquiescence cannot be imputed in the absence of all knowledge of the facts of which it is predicated." See, also, *Nelson* v. *Carrington*, 4 Munf., 332; *Wissler* v. *Craig*, 80 Va., 22; *Bowie* v. *Poor School Society of Westmoreland*, 75 *Id.*, 300; *Snavely* v. *Pickle*, 29 Gratt., 27; *Alexander* v. *Byrd*, 85 Va., 690.

Our opinion, therefore, is that the decree dismissing the bill is erroneous, and that the same must be reversed and annulled.

DECREE REVERSED.