# Staunton

MINNIE B. HARPER, ET ALS. V. GEORGIA A. HARPER, ET ALS.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*S. S. Lambeth, Jr.,* and *J. Powell Royall,* for the appellants.

*James W. Harman,* for the appellees.

GREGORY, J., delivered the opinion of the court.

In 1928, Georgia Harper, her five sisters and the administratrix of a deceased sister, instituted a general creditor's

suit against the administrator of E. Howard Harper, Minnie Harper, widow of E. Howard Harper, Jas. D. Harper, Samuel Harper, Wm. Harper and S. T. Howard. The complainants in the bill prevailed and two final decrees were entered—one overruling a plea of the statute of limitations which had been interposed to the claim of J. D. Harper, amounting to some $13,000.00, and the other, ordering a certain tract of land containing 350 acres in Tazewell county to be sold to satisfy, among other debts, a lien in favor of the complainants.

In 1907, E. Howard Harper conveyed a tract of land to his parents, Oliver Harper and Catherine Harper, for their lives, and at the death of one of them, the land passed to the survivor during his or her life. At the death of the survivor, the land became the property of the grantor, E. Howard Harper, in fee simple. In the deed of conveyance, which was executed on May 21, 1907, the said E. Howard Harper, agreed to pay to his seven sisters, at the death of his father, Oliver Harper, the sum of $200.00 each, these amounts being secured by a lien in the said deed upon the land in this language: "And which amounts to be paid to said sisters is hereby made a lien and charge on the lands mentioned in this deed."

The recitals found in the deed, disclose that it was made in consideration of love and affection, and for the purpose of settling a certain chancery suit which was then pending, between the father, Oliver Harper, and the son, E. Howard Harper, in Tazewell county.

On August 22, 1911, the father, Oliver Harper, died and upon his death, the payment of $200.00 to each of his seven sisters became due by the brother, E. Howard Harper. Catherine Harper, the mother, was the survivor and life tenant at the death of Oliver and she departed this life on February 18, 1920, at which time the land became the property of E. Howard Harper, in fee simple, according to the provisions of the deed. E. Howard Harper made no disposition of the land, either by deed or will, and he departed this

life on December 21, 1927, at which time, and years before, he was and had been a resident of West Virginia. A short time after the death of E. Howard Harper, this suit was instituted by six of his sisters and the administratrix of one of them who had died, against the administrator of the estate of E. Howard Harper, and his three brothers, and S. T. Howard the only child of the deceased sister, and Minnie Harper, widow of E. Howard Harper, in which it was sought to subject the land to the payment of the debts of E. Howard Harper, including the enforcement of the lien for $200.00 to each of the sisters. It was alleged in the bill that the $200.00 payable to each sister and which was secured by a lien upon the land, was a superior claim to that of the widow, Minnie Harper, for any dower interest she might have, by reason of her marriage to E. Howard Harper, which was solemnized on May 7, 1923. It was also alleged in said bill that E. Howard Harper left no child. Later, the bill was amended and it was alleged that Minnie Harper, the widow, was claiming that her son Ivan, was the son of E. Howard Harper, born out of wedlock, but made legitimate by the subsequent marriage and the recognition of him by E. Howard Harper, as his son, and that he was the sole heir at law of Harper. It was further alleged that such claim by Minnie Harper was untrue and that Ivan was not the son of E. Howard Harper. A guardian *ad litem* was appointed for Ivan and an answer filed in his behalf. Minnie Harper filed an answer and an amended answer in which she asserted that Ivan was the son of E. Howard Harper. She also asserted that the $200.00 due the seven sisters had been paid; that if said amounts had not been paid, they were barred by the statute of limitations; that the complainants had had possession of the land since 1911 and that an accounting of rents for which they should be charged would exceed their demands. She also asserted laches as a defense. The administrator of Harper and the guardian *ad litem* also filed pleas of the statute of limitations.

The cause was referred to a commissioner, who took evidence, and filed his report. The court heard the cause upon the pleadings, the report and the evidence and in a written opinion held that the statutes of limitations plead were not applicable and that Ivan was not the child of E. Howard Harper.

The appellants contend (1) that the court should have sustained the plea of the statute of limitations; (2) that the appellees should have been charged with rent for the use of the land; (3) that the appellees have lost any rights they may have had to the $200.00 payments, by their laches; (4) that Code section 6209 is applicable and the testimony regarding the debts due the appellees was not corroborated as is required by said section; (5) that the dower of Minnie Harper is superior to the claim of the appellees; and (6) that Ivan is the child of E. Howard Harper.

J. D. Harper filed with the commissioner an interest-bearing note which he held, made on March 15, 1923, by E. Howard Harper and payable one day after date to J. D. Harper. This note was in the sum of $9,000.00 and the interest thereon amounted to $4,132.50, principal and interest aggregating $13,132.50, which said amount was allowed by the court as a claim against the estate of E. Howard Harper. The administrator filed a plea of the statute of limitations to the said note. This suit, which is a general creditor's suit, was instituted May 5, 1928. Five years from the due date of the note expired on March 16, 1928, but E. Howard Harper died on December 21, 1927, and by reason of his death under section 5809 of the Code one year is to be eliminated in the computation of the time and when the year is excluded it is obvious that the note is not barred. This suit, and the order of reference under section 5826a of the Code suspended the running of the statute.

Code, section 5809, provides that "The period of one year from the death of any party shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to com-

mence any proceeding to preserve or prevent the loss of any right or remedy," and Code section 5826a provides that "When a suit in chancery is commenced as a general creditors' suit * * * the running of the statute of limitations shall be suspended as to debts provable in such suit from the commencement of the same, provided they are brought in before the master under the first reference for an account of debts; * * *."

These two sections are applicable and clearly prevent the bar of the five year statute of limitations invoked.

The appellants contend that the trial court erred in failing to apply the statute of limitations to the lien debt due each of the seven sisters for the principal sum of $200.00 each with interest. Code, section 5818, which is the five year statute of limitations, was invoked. Code, section 5810, which is the ten year statute, was also invoked.

The trial court held that neither statute of limitations was applicable because they were applicable only to personal actions. It was also held by the trial court that no statute of limitations exists, creating a bar to the said lien debts and that the only bar would be the presumption of payment, which is twenty years, and that time has not elapsed in this case.

Section 5827 has no application, because the lien we are dealing with is not a deed of trust or mortgage given to secure the payment of money, nor is it a lien given to secure the payment of unpaid purchase money.

Section 5810 has no application, because it applies only to personal actions. The title of the act is "Limitation of personal actions generally." Likewise section 5818 has no application because it deals also with personal actions. It begins in this language: "Every personal action," etc. The case here is one in which a lien is sought to be enforced in a chancery suit against the land. It certainly is not a personal action.

This brings us to a consideration of the nature of the lien involved in the present suit. From the express

language used "and which amounts to be paid to said sisters is hereby made a lien and charge on the lands * * *" it is manifest that E. Howard Harper intended to create a security on the land for the payment of the amounts mentioned, to his seven sisters. He, in effect, dedicated the land to that particular purpose and the sisters are authorized to seek payment from it. An equitable lien was thereby created in their favor.

In *Malarkey* v. *Ballard,* 137 Va. 631, 120 S. E. 245, 246, it is said:

"The controlling principle is well stated in *Brown* v. *Ford,* 120 Va. 245, 91 S. E. 145, 149, where this language from 2 Pomeroy's Eq. (2d ed.), sec. 1235, is quoted with reference to such liens: 'The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation * * * creates an equitable lien upon the property so indicated which is enforceable against the property * * *. Under like circumstances a mere verbal agreement may create a similar lien upon personal property.'

"This also is said in *Dulaney* v. *Willis,* 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep. 815: 'Whatever the form of the contract may be, if it is intended thereby to create a security it is an equitable mortgage enforced upon the principle that equity will decree that as done which by agreement is agreed to be done.'

"As has been recently said by this court in *Armour Fertilizer Works* v. *Taylor,* 129 Va. 7, 105 S. E. 576: 'In the nature of the subject, the authorities do not attempt other than general definitions of an equitable lien.'"

See, also, *Kidwell* v. *Henderson,* 150 Va. 829, 143 S. E. 336.

In *United C. M. Co.* v. *Brown,* 119 Va. 813, 89 S. E. 850, 855, L. R. A. 1917F, 1100, it was held:

■ "There 'is a very marked distinction between an action at law to recover judgment for a legal demand and a proceeding in equity to enforce an equitable lien for the same demand. The remedy at law may be barred by the statute of limitations, but the statute of limitations does not extinguish the debt, and a lien therefor may be enforced in equity although the debt be barred. This is nowhere better settled than in Virginia. *Bowie* v. *Poor School Soc.,* 75 Va. 300; *Wolf* v. *Violett's Adm'r,* 78 Va. 57; *Paxton* v. *Rich,* 85 Va. 382, 7 S. E. 531, 1 L. R. A. 639; *Hamilton* v. *Glenn,* 85 Va. 906, 9 S. E. 129; *Tunstall's Adm'r* v. *Withers,* 86 Va. 896, 11 S. E. 565."

The authorities cited and the quotations therefrom, conclusively demonstrate that the lien here asserted is an equitable lien and in no way affected or barred by any of the various statutes of limitations invoked.

■ It is needless to discuss the presumption of payment because no such presumption exists. The right to enforce the lien accrued on the 22nd day of August, 1911, the time of the death of Oliver Harper, and this suit was instituted for the purpose of enforcing said lien in May, 1928. It therefore appears that less than twenty years elapsed. No presumption of payment exists.

■ The contention that the appellees should have been charged with rent for the land is not sustained by any evidence. It is clearly shown that J. D. Harper was in possession and not the appellees. If rent is to be charged to anyone, it should be charged to the tenants in possession. It certainly could not be charged to the appellees. They have never had the use and possession of the land.

■ The next question which arises is whether the appellees were guilty of laches and thereby lost their right to assert their lien which was created for them. The determination of this question necessitates a discussion of the relevant evidence and the elementary principles of the doctrine of laches. The evidence discloses that E. Howard Harper and his brother J. D. Harper were partners in busi-

ness at the time of E. Howard Harper's death and had been for a long time prior thereto. E. Howard Harper was an attorney living in West Virginia and J. D. Harper took possession of the land when the surviving life tenant died in 1920 and continued in possession until this suit was instituted in 1928. He managed the farm for his brother, and Georgia Harper, one of the sisters, lived with him as his housekeeper. She was the only one of the seven sisters who lived there, and she was there, not as one in possession, but to keep house for her brother who had charge of the farm. It is true, the sisters waited some seventeen years before they sought to enforce their lien, but during that time their brother, E. Howard Harper, was not financially able to pay them. Their mother was the surviving life tenant until 1920 and of course they naturally had no desire to institute any proceedings which would interfere with her possession during her life, if we assume that her possession could have been disturbed. The fact that the sisters indulged their brother over so long a period of time, certainly does not show that they were guilty of laches. There is no evidence which discloses that E. Howard Harper was injured by the delay, in fact it would appear that the delay inured to his benefit. Delay alone is not sufficient to constitute laches. Prejudicial delay must be shown before the defense can be successfully maintained. Laches, in legal significance, is delay that works a disadvantage to another. *National Valley Bank* v. *U. S. Fidelity & Guaranty Co.*, 153 Va. 484, 150 S. E. 403.

We do not think the defense of laches is applicable and the trial court committed no error in disregarding it.

The appellants contend that the trial court found the lien valid and decreed the land to be sold to satisfy the debts to the sisters upon their uncorroborated testimony in violation of Code, section 6209, they being interested parties and E. Howard Harper, the other party, being dead. There is no merit in this contention. The deed, evidencing the debt and carrying the provision which created the lien,

and which was signed by E. Howard Harper, was in evidence. No attack was made upon it and no question raised as to its validity. It was sufficient proof of the debt and the lien, and it, as evidence, did not have to be corroborated under section 6209. The finding by the trial court in favor of the sisters was not based upon their uncorroborated testimony. It was based upon the deed. No judgment or decree has been "rendered in favor of an adverse or interested party founded on his uncorroborated testimony * * *" in this suit. Section 6209 has no application. But if the section were applicable the testimony of the sisters was sufficiently corroborated by the deed.

The court below subordinated the dower of Minnie Harper, the widow, to the lien of the appellees. She claims that this was error. We cannot agree. The lien and debt in favor of the appellees was created by the deed in 1907, while the dower rights of the widow arose at her marriage to E. Howard Harper in 1923. It is plain that the lien is superior to her dower.

The lower court held that the boy, Ivan, was not the child of E. Howard Harper.

Section 5269 of the Code provides that, "If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him before or after marriage, shall be deemed legitimate."

This section was construed in *Hoover* v. *Hoover*, 131 Va. 522, 105 S. E. 91, 109 S. E. 424, and this court there held that in order to be legitimated under this section it is necessary that (1) the man should have had a child by the woman, (2) that the man and woman should have intermarried after the birth of the child; and (3) that the child should have been recognized by the man before or after marriage. In the *Hoover Case* a rehearing was granted and the conclusion of the court in the original opinion was reversed on the evidence. The construction of the statute and the essentials necessary to be established as laid down

in the original opinion were not disturbed upon the re-hearing, and those three essentials are still necessary to be established. The second and third essentials have been established in the present case. Harper and Minnie were married in 1923 and the evidence conclusively shows that Harper recognized Ivan as his own son. It is the first essential that creates the difficulty. Was Ivan the child of Harper?

Appellant, Minnie Harper, the mother of Ivan, testified that she met Harper in Charleston, West Virginia, in 1912, that illicit relations were had between them and as a result, in 1914, Ivan was born out of wedlock; that he was the child of Harper, and that she and Harper were married in 1923 and Harper recognized Ivan as his own child.

If Minnie Harper's testimony is true, it establishes the three necessary essentials which have been referred to. Her testimony is supported by several witnesses, who were neighbors of the Harpers after their marriage. They testify that Harper frequently referred to Ivan as his son, and one of them testified that Harper referred to the boy using these words: "Look at them Harper shoulders." Harper told another witness after the marriage that he married Minnie "to give *his* boy his name." Several letters written by Harper to Minnie just before, and to Minnie and Ivan just after, the marriage were introduced and from them it is clear that Harper recognized Ivan as his own son. The evidence conclusively shows that Harper intended to treat Ivan as his own child. So we have the direct testimony of the mother that Ivan was the child of Harper and the corroborating declarations of Harper, testified to by his neighbors. Most of the testimony in opposition, is from a number of witnesses who relate declarations made by Harper to them, which are contradictory of those declarations made by him to his neighbors. The testimony reveals that he told a number of persons that he never met Minnie until 1923, the year of the marriage, at which time Ivan

was nine years of age. The brothers and sisters of Harper also testify that he never met Minnie until 1923 and therefore had no access prior to that time, but they are interested in the outcome of this suit and it has been shown that they have considerable feeling against Minnie. It would seem that the prejudice displayed by them, to a large extent, destroys the strength of their testimony. Minnie Harper's testimony is assailed by the circumstance that she said she met Harper in 1912, but failed to produce witnesses to show that they had ever been seen together prior to 1923. She also failed to produce any letters from Harper written prior to 1923 but did produce several which were written a short time prior and a short time after the marriage in 1923. The letters disclosed the ardent love and affection Harper had for her and it is argued that if he had known her in 1912, his love, possibly, would not have been as strong in 1923, as was expressed in the letters. A number of other circumstances are detailed in the evidence which tend to discredit her testimony. Some of them cannot be reconciled with her testimony, but after a careful consideration of the whole testimony we are of opinion that the greater weight of it shows that Ivan was the child of E. Howard Harper. We, therefore, are of opinion that the three essentials of the statute were established and complied with, and that Ivan is now the legitimate son of E. Howard Harper and Minnie Harper. With this modification, the decrees are affirmed.

*Modified and affirmed.*