# Richmond.

BUNCH'S EX'OR v. FLUVANNA COUNTY.

JANUARY 9th, 1890.

1. COUNTY BONDS—*Authority to issue—Motion on—Defence—Case at bar.*—In proceedings by motion on instrument purporting to be a county bond issued by order of county court under act approved October 27th, 1863, and payable to plaintiff's intestate, whose name was written in the bond by the county clerk, yet did not appear on the books of the county's agent, directed to receive the money on said bonds and deed at time of trial, there was no evidence that intestate paid value for it, or how he got it, and that any demand had been made on it for fifteen years after maturity : *held,* the findings that the bond, if issued at all, was issued without authority, was warranted ; and it was competent for the county to make, *ore tenus,* any defence allowable by plea in a regular action.

2. Power to municipal corporations to borrow money, implies power to issue its bonds therefor.

Appeal from decree of circuit court of Fluvanna county entered April 14th, 1887, affirming the decision of the county court of said county, disallowing the claim of the appellants, Burwell G. Bunch's executors against the said county.   Opinion states the case.

*W. B. Pettit* and *J. K. Parish,* for the appellants.

*A. A. Gray,* for the appellee.

LEWIS, P., delivered the opinion of the court.

This is a controversy between the executors of Burwell G. Bunch, deceased, and the county of Fluvanna. It relates to a certain paper writing purporting to be a bond of the county for $5,000, payable to Bunch two years after date, to-wit: on the 1st day of May, 1866, and reciting on its face that it was issued under an order of the county court, made on the 25th day of April, 1864, by authority of an act of the General Assembly passed on the 27th day of October, 1863 (Acts 1863–64, p. 20).

By that act the county courts of the state were authorized " to borrow money " on the credit of their respective counties for the purchase of articles of prime necessity, to be sold at cost to the residents of such counties. And at its April term, 1864, the county court of Fluvanna, pursuant to the terms and conditions of the act, ordered that the sum of $50,000 be borrowed on the credit of the county for the purposes mentioned in the act. The order also directed that the money be borrowed on *the bonds* of the county, and at a rate of interest not to exceed *six per centum per annum*, the bonds to be issued as follows: Twenty bonds for $1,000 each, ten for $500 each, and five for $5,000 each, all to be made payable two years after date at the Bank of Virginia, in this city, the interest to be payable semi-annually at the same place. All the bonds were ordered to be dated on the 1st day of May, 1864, and to be signed and attested by the presiding justice and the clerk of the court or his deputy, with the seal of the court attached.

The order then went on to provide as follows: "It is further ordered that William Rock, R. E. Nelson, and John Sclater be, and they hereby are, appointed commissioners, whose duty it shall be to make sale of the said bonds, or so many thereof as may be necessary, to raise the sum of $50,000, at public auction or in such other manner as they may deem most judicious, so that the same be not sold below their par value; and the said commissioners are authorized and directed to pay over to William Rock, the agent hereby appointed, the money

arising from the sale of the bonds aforesaid as soon as they receive the same, taking his receipt therefor, and to make report of their proceedings hereunder to the next term of this court."

The paper writing in question purports to have been issued under this order and the act aforesaid, and is regular in form, and a complete instrument on its face.

The claim of the executors, founded upon this paper, was presented to the board of supervisors of the county, on the 10th day of June, 1881, and was, on the same day, disallowed. They thereupon appealed to the county court, where a jury being waived, the action of the board was affirmed; and this judgment of affirmance having been subsequently affirmed by the circuit court of Fluvanna county, the case on a writ of error was brought to this court.

The principal defense set up by the county against the claim was, that the instrument in question was executed and issued without lawful authority, and was therefore void.

The executors, however, insist that inasmuch as the instrument is regular on its face, and there was no affidavit putting its proper execution in issue, parol evidence on the subject was inadmissible. But this is a mistaken view. The proceeding was a mere motion, in which no formal pleadings are required, and in which, therefore, it was competent for the county to make, *ore tenus*, any defense that could be appropriately made by plea in a regular action. *M'Kinster* v. *Garrott*, 3 Rand, 554; *Supervisors of Washington County* v. *Dunn*, 27 Gratt., 608, 620.

Hence, the county court did not err in entertaining the defence, and hearing evidence, as it did, inasmuch as the statute provides that an appeal from an order of a board of supervisors, in allowing or disallowing a claim against the county, shall be tried and determined the same as appeals of right from an order of a county court in a controversy concerning a will. Code, sec. 842.

Nor did it err in affirming the order of the board. In other

words, the defence that the instrument in question was issued, if at all, without lawful authority, is, we think, well founded. The act of October 27, 1863, authorized the court of any county or corporation in the state to borrow a sum of money not exceeding, at any one time, ten thousand dollars for every one thousand of white population, and the county court of Fluvanna county having ascertained that the white population of the county was five thousand, it consequently had no authority to borrow a sum exceeding fifty thousand dollars, the amount specified in its order: And bonds for that amount were accordingly issued and sold. There is no evidence, however, that the instrument in question was among this number; at least, there is none that is satisfactory.

When the case was heard in the county court, Rock, who had been the agent of the county, to whom the proceeds of the bonds were directed to be paid, was dead. His books, however, which were proven to be in his handwriting, and which constituted the official record of his transactions as such agent, were introduced in evidence, from which it appeared that the sum of $50,000 was borrowed by the county, and the names of the persons from whom the money was obtained were given. But the name of Burwell G. Bunch was not in the list, and the bonds, from the sales of which the money was derived, seem to have been sold at par. These books, which were required by the act above mentioned to be kept, were clearly admissible in evidence, and are decisive of the case. 1 Greenl. Ev., sec. 484.

The bonds issued by the county were not made negotiable in form, and they recited on their face that they were transferrable only on the books of the county in the clerk's office, either in person or by attorney. It seems that they were all signed and executed in blank as to the name of the obligee, and it was proved that Bunch's name as obligee in the instrument in question was in the handwriting of the county clerk. It was not proved, however, when, or how, the instrument

went into Bunch's possession, or that he paid value for it. In fact, there was no explanation on any of these points. No demand for interest upon it appears to have ever been made, and no claim of any kind on account of it seems to have been made before it was presented to the board of supervisors in June, 1 81, more than fifteen years after it purported to have become due. Nelson and Sclater, who, with Rock, were appointed commissioners at the April term, 1864, to raise money on the bonds ordered to be issued, were examined as witnesses in the case, but neither had any recollection of having sold a county bond to Bunch, and the books kept by Rock show no such sale.

No point is made as to the validity of the act of October 27, 1863, and we do not doubt that it was competent for the county court, under the authority conferred by the act, to issue bonds for the money authorized to be borrowed. The power to do so was implied in the power to borrow. That express power to a municipal corporation to borrow money includes the power to issue its bonds, or other usual securities, to the lender, is a proposition now too well settled to be questioned. Without such incidental power, the power to borrow money would ordinarily be nugatory, and wherever a general power to do a thing is given, every particular power necessary for doing it, is included. *Rogers* v. *Burlington,* 3 Wall., 654; *Seybert* v. *Pittsburg,* 1 *Id.,* 272; *Middleton* v. *Alleghany County,* 37 Pa., St., 241; 2 Dan'l Neg. Inst., sec. 1527. But the county was not empowered to borrow a sum exceeding $50,000, and as the order of the county court forbade the bonds to be sold below par, it follows that any issue of bonds in excess of that amount by the agents of the county was *ultra vires* and void. It was, therefore, incumbent on those who acquired the bonds to look to the statute and the order of the county court, to which the bonds on their face referred, and ascertain whether their issue was authorized, and to ascertain, also—as they could easily have done by referring to Rock's official books—

whether the power of the agents of the county in that regard had been exhausted or not.

" It is a general and fundamental principle of law," says Judge Dillon, " that all persons contracting with a municipal corporation must, *at their peril*, inquire into the power of the corporation or its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation. So, also, those dealing with an agent of a municipal corporation are likewise bound to ascertain the nature and extent of his authority." " This is certainly so," he adds, " in all cases where this authority is special and of record, or conferred by statute." 1 Dill. Mun. Corp. (2d ed.), sec. 372. And this is the law, as had been repeatedly held, even as respects commercial paper alleged to have been issued under a delegated authority, since the protection which is thrown around such paper cannot be used to establish the authority by which it was originally issued. *Marsh* v. *Fulton County*, 10 Wall., 676 ; *Coles* v. *Cleburne*, 131, U. S., 162.

In the present case, as we have already said, there was no proof as to when the instrument in question was acquired by Bunch, or whether or not he gave value for it. And in the absence of evidence on those points, and in view of the unexplained delay in bringing forward the claim, and all the circumstances already adverted to, we think the county court was warranted in drawing the conclusion that the paper was issued, if it was ever issued at all, without lawful authority, and is therefore void.

It is true, that while it appears from the books of the agent, Rock, that $50,000 was borrowed by the county, it does not appear that as many as five five-thousand-dollar bonds were sold, though the order of the county court provided that five bonds of $5,000 each should be issued. It is also true that the instrument in question purports to be a bond for that amount. But we do not think that these considerations affect

the case, as the provision in the order of the court, just mentioned, was directory merely. *Supervisors* v. *Galbraith*, 99 U. S., 214.

It was proved, moreover, that bonds in blank were signed and sealed to an amount considerably in excess of $50,000, and a number of such papers were found some years after the war in a desk in an old office on the court green, one of which is made a part of the record before us. There are also filed with the record two papers, purporting to be bonds issued by the county of Fluvanna under the act of October 27, 1863, for $1,000 each, one payable to Smith B. Thomas, the other to David L. Gray, but which in point of fact were never issued, although on their face they are perfect and complete instruments. How these papers came to be prepared is not explained. Their existence, however, would seem to indicate a degree of carelessness on the part of the agents of the county who were intrusted with the duty of preparing the bonds, that is somewhat remarkable. And it may be that the paper in question owes its existence to the same cause. It is needless, however, to speculate on the subject, as mere speculation, in the absence of evidence, can subserve no useful purpose. It is enough to say that the *onus* was on the executors to show that the paper in question came regularly and lawfully into the hands of their testator, and that having failed to do so, the judgment must be affirmed.

JUDGMENT AFFIRMED.