# Richmond

## A. S. Harrison, Jr., Attorney General of Virginia v. Sidney C. Day, Jr., Comptroller of Virginia.

November 30, 1959.

Record No. 5053.

Present, All the Justices.

The opinion states the case.

*A. S. Harrison, Jr., Attorney General* and *John W. Knowles, Assistant Attorney General* (*Kenneth C. Patty, Assistant Attorney General, on brief*), for the petitioner.

*Collins Denny, Jr.,* for the respondent.

SNEAD, J., delivered the opinion of the court.

Albertis S. Harrison, Jr., Attorney General of Virginia, filed in this court on June 23, 1959, pursuant to the provisions of § 8-714, Code 1950, an original petition for a writ of mandamus against Sidney C. Day, Jr., Comptroller of Virginia. In it he prayed that the court will adjudge that the provisions of Chapter 19.2 of Title 15 (Sections 15-666.69 through 15-666.76) and Section 51-111.24(d), Code 1950, as amended,[1] which authorize county school boards to issue negotiable

---

[1] Three of the challenged sections follow:

"§ 15-666.69. *Borrowing for school construction authorized.*—In conformity with section 115a of the Constitution of Virginia, as amended by an amendment ratified in the general election in November, nineteen hundred and fifty-eight, the school board of any county is hereby authorized to contract to borrow money from the Virginia Supplemental Retirement System for the purpose of school construction, with the approval of the governing body of the county, and the Board of Trustees of the Virginia Supplemental Retirement System is hereby authorized to lend the money if it be available for investment, subject to and in conformity with the provisions of this chapter."

"§ 15-666.76. *Bonds deemed negotiable instruments; sale of bonds by Trustees of Retirement System; bonds made legal investments.*—Bonds issued under the provisions of this chapter and purchased by the Board of Trustees of the Virginia Supplemental Retirement System shall be deemed negotiable instruments under the laws of this State. Such Board of Trustees may, in its discretion, sell any such bonds so purchased and held by it at such time or times as to it may seem desirable

bonds as evidence of indebtedness for school construction without a vote of the people of the county and the Board of Trustees of the Virginia Supplemental Retirement System to accept such bonds in the manner prescribed therein, are valid enactments of the General Assembly and are not in violation of Section 115a of the Constitution of Virginia, as amended. He also prayed that the Comptroller be required to issue warrants upon the State Treasurer for the payment of such amounts as the Board of Trustees of the Virginia Supplemental Retirement System may authorize on account of such loan, to be evidenced by negotiable school construction bonds.

The Comptroller had previously advised the Attorney General by letter dated, June 22, 1959, that the Board of Trustees of the Virginia Supplemental Retirement System had authorized the lending of retirement trust funds to the Rockbridge County School Board pursuant to the provisions of the above statutes, the indebtedness to be evidenced by negotiable bonds of the School Board. He stated that he entertained doubt as to the validity of such loan and the validity of acceptance of such bonds as evidence of debt by the Board of Trustees of the Virginia Supplemental Retirement System, since the legislation authorizing it did not provide for submission of the question to a vote of the people of Rockbridge County. He further advised that even though he be requested to issue warrants on account of the loan, he would not comply until there had been a final adjudication by this court that the statutory provisions are valid. Hence this proceeding was instituted.

The County School Board of Rockbridge County, by resolution adopted on May 13, 1959, "determined" that it was necessary and expedient to contract for a loan in the sum of $730,000 with the Virginia Supplemental Retirement System on the credit of Rock-

---

in the management of the funds under its control; and such bonds are hereby made securities in which all public officers and bodies of this State, and all counties, cities and towns and municipal subdivisions, all insurance companies and associations, all savings banks and savings institutions, including savings and loan associations, trust companies, beneficial and benevolent associations, administrators, guardians, executors, trustees and other fiduciaries in this State may properly and legally invest funds under their control."

"§ 51-111.24. *Board as trustee of funds; investments.—*
* * *

"(d) The Board is specifically authorized, subject to and in conformity with the provisions of chapter 19.2 (§ 15-666.69 et seq.) of Title 15 of the Code of Virginia, as amended, to contract with the school boards of the several counties to lend them money belonging to the several funds administered by the Board and in hand for investment, for the purpose of school construction in such counties."

bridge County to provide funds to "construct and equip" a high school to serve the attendance areas of Brownsburg and Fairfield; that the interest rate, not to exceed 6% per annum, would be determined by the open market on bonds of similar character at the time they were sold, and that a tax sufficient to pay the principal and interest on the loan should be levied upon all property from which the School Board derives its funds for the construction of school buildings. A certified copy of the resolution was transmitted for approval to the County Board of Supervisors of Rockbridge County, which by resolution adopted on May 14, 1959, made the same determinations as in the School Board's resolution and approved its request. A certified copy of this resolution was sent to the School Board. On June 22, 1959, the School Board amended its resolution of May 13, 1959, by deleting therefrom the words "and equip", thus limiting the use of the proceeds to construction. The Board of Supervisors, on June 30, 1959, amended its resolution of May 14, 1959, accordingly.

At a meeting of the Board of Trustees of the Virginia Supplemental Retirement System held on June 22, 1959, a resolution was adopted authorizing the Treasury Board to proceed to make the requested loan of $730,000, to be evidenced by negotiable bonds in accordance with Chapter 19.2 of Title 15 of the Code, as amended, provided the maximum maturity date of the bonds should not be longer than twenty years from the date of issuance. The resolution requested the Comptroller to issue warrants upon the Treasurer of Virginia on account of the loan when authorized by the Treasury Board.

It was stipulated that the total assets of the Virginia Supplemental Retirement System have increased from $61,616,803.32 on June 30, 1954, to approximately $113,773,814.90 on June 30, 1959. The amount of uninvested cash on hand on June 30, 1959, was $82,995.67, and the estimated cash on hand for investment during July, 1959, was $9,936,558.61.

Petitioner says the issue presented is whether Chapter 19.2 of Title 15 (§§ 15-666.69 through 15-666.76) and § 51-111.24(d) of Code 1950, as amended, under which the proposed loan is to be made, are violative of Section 115a of the Virginia Constitution.

Respondent questions whether the amendment to Section 115a, claimed to have been adopted in 1958, has been adopted in the manner provided by Section 196 of the Constitution, which reads thus:

"§ 196. *Amendments.*—Any amendment or amendments to the Constitution may be proposed in the Senate or House of Delegates, and if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes taken thereon, and referred to the General Assembly at its first regular session held after the next general election of members of the House of Delegates, and shall be published for three months previous to the time of such election. If, at such regular session or any subsequent extra session of that General Assembly the proposed amendment or amendments shall be agreed to by a majority of all the members elected to each house, then it shall be the duty of the General Assembly to submit such proposed amendment or amendments to the people, in such manner and at such times as it shall prescribe; and if the people shall approve and ratify such amendment or amendments by a majority of the electors, qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments shall become part of the Constitution."

The italicized part of Section 115a below was added by the 1958 Amendment and the Section now reads:

"§ 115a. *Power of counties and districts to borrow money and to issue evidences of indebtedness restricted.*—No debt shall be contracted by any county, or by or on behalf of any district of any county, or by or on behalf of any school board of any county, or by or on behalf of any school district in any county, except in pursuance of authority conferred by the General Assembly by general law; and the General Assembly shall not authorize any county, or any district of any county, or any school board of any county, or any school district in any county, to contract any debt except to meet casual deficits in the revenue, a debt created in anticipation of the collection of the revenue of the said county, board or district for the then current year, or to redeem a previous liability, unless in the general law authorizing the same provision be made for the submission to the qualified voters of the proper county or district, for approval or rejection, by a majority vote of the qualified voters voting in an election, on the question of contracting such debt; and such approval shall be a prerequisite to contracting such debt. No scrip, certificate or other evidence of county or district indebtedness shall be issued except for such debts as are expressly authorized in this Constitution or by the laws made in pursuance thereof.

*"This section shall not be construed as prohibiting The General Assembly from authorizing, by general law, the school board of any county to contract to bororw money from the Virginia Supplemental Retirement System, or any successor thereto, for the purpose of school construction, with the approval of the governing body of the county."* (Italics supplied.)

Respondent's position is that the record does not support petitioner's contention that Section 115a was amended in 1958 by adding the new paragraph. He concedes the record "does show that the 1956 Session of the General Assembly proposed an amendment; that the proposal was published as required by law, that the 1958 Session approved the proposal; and that the 1958 Session adopted a proper method for submitting the proposal to the people." On the other hand he maintains that in order to be a valid amendment there must be compliance with the manner in which the General Assembly provides for the submission of it to the voters, and that the record fails to show that the matter was submitted as directed.

The submission of the proposed amendment to Section 115a was provided for by Chapter 304 of 1958 Acts of Assembly, which is similar in form to prior Acts of Submission adopted since the Constitution of 1902. The Act directed that the sense of the qualified voters be taken upon the ratification or rejection of the proposed amendment, which was set forth therein, at the election to be held on the Tuesday after the first Monday in November, 1958, and stated the specific language of the question to be presented on the ballot. With regard to the "manner" in which the sense of the voters should be taken, it provided:

"The ballot shall be prepared, distributed and voted, and the results thereof ascertained and certified, in the manner prescribed by § 24-141 of the Code of Virginia. It shall be the duty of the clerks and commissioners of election of each county and city, respectively, to make out, certify and forward an abstract of the votes cast for and against said proposed amendment in the manner now prescribed by law in relation to votes cast in general elections.

"It shall be the duty of the State Board of Elections to open and canvass the said abstracts of returns, and to examine and make statement of the whole number of votes given at said election for said proposed amendment and against said proposed amendment, respectively, in the manner now prescribed by law in relation to votes cast in general elections; and it shall be the duty of the State Board

of Elections to record said certified statement in its office, and without delay to make out and transmit to the Governor of the Commonwealth an official copy of said statement, certified by it.

"*The governor shall, without delay, make proclamation of the result, stating therein the aggregate vote for and against said amendment,* to be published in such newspapers in the State as may be deemed requisite for general information; *and if a majority of said votes be cast for the ratification of the amendment, he shall annex to his proclamation a copy thereof.* The State Board of Elections shall cause to be sent to the clerks of each county and corporation, at least thirty days before the election, as many copies of this act as there are places of voting herein; and it shall be the duty of such clerks to forthwith deliver the same to the sheriffs or sergeants of their respective counties and cities for distribution. *Each such sheriff or sergeant shall forthwith post a copy of such act at some public place in each election district at or near the usual voting place in the said district.*" (Italics supplied.)

On November 24, 1958, the Governor issued his proclamation in the following words and figures:

"Pursuant to the requirements of Chapter 304 of the Acts of the General Assembly of Virginia of 1958, I, J. Lindsay Almond, Jr., Governor of Virginia, do hereby proclaim that the votes cast at the general election on November 4, 1958, as ascertained and determined by the State Board of Elections at its meeting held on November 24, 1958, numbered 292,281 for the proposed amendment to Section 115-A of the Constitution of Virginia and 130,348 against the proposed amendment."

Respondent argues that the proclamation is defective in that it is not in accordance with the requirements of Chapter 304 of the 1958 Acts of Assembly, *supra.* He points out that the Governor did not proclaim the amendment ratified, nor did he annex a copy of the amendment to the proclamation. As a consequence, he says, there is nothing on the face of it or attached to it which shows what is the amendment on which the people voted. According to him, the use of this "short form" proclamation was begun in 1946 and has followed each amendment since then.

It is contended by respondent that if the proclamation is not issued in strict accord with the Act it is not evidence that all things required after legislative action have been done. On the other hand if the proclamation is issued in strict accord with the Act, then it

is conclusive evidence that such requirements have been met. His contention is based upon the Federal rule, and he cites *Leser v. Garnett*, 258 U. S. 130, 42 S. Ct. 217, 66 L. ed. 505, and *Coleman* v. *Miller*, 307 U. S. 433, 59 S. Ct. 972, 122 A. L. R. 695, 83 L. ed. 1385. However, he frankly says that State courts have generally considered, or have said, that despite the proclamation of political authority all steps which are directed to be taken to amend may be inquired into provided the matter has not been specifically committed by the Constitution to a special tribunal or person. 16 C. J. S., Constitutional Law, § 146, p. 707. In reference thereto he quotes from *McConaughy v. Secretary of State*, 106 Minn. 392, 401, 119 N. W. 408, where it was said:

"An examination of the decisions shows that the courts have almost uniformly exercised the authority to determine the validity of the proposal, submission, or ratification of constitutional amendments. It has been judicially determined whether a proposed amendment received the constitutional majority of votes * * *; whether the failure to enter the resolution of submission upon the legislative journals invalidates the amendment * * *; whether the method of submission is sufficient * * *; whether the publication of the amendment or of a notice relative to it is sufficient * * *."

In *Scott v. James*, 114 Va. 297, 76 S. E. 283, a citizen and taxpayer sought to enjoin the Secretary of the Commonwealth from sending to court clerks copies of an Act submitting the question of amending the Constitution for posting by the sheriffs. It was alleged that certain steps required by Section 196 of the Constitution had not been followed. The injunction was denied and it was held that courts cannot interfere or stop the proceedings by inquiring into the question whether the necessary steps have been taken prior to the time the people vote on the amendment. There it was said:

" '* * * If upon completion of the proceedings, the validity of the amendment is assailed on the ground that the several provisions of the Constitution have not been complied with, then the courts can pass upon the validity of the amendment. * * *' ". 114 Va., at page 304.

It is respondent's position that since the proclamation is defective, there is no evidence before us that the proposed amendment was submitted to the electors in the "manner" or at the "time" prescribed by the Act submitting it, and therefore on this record Section 115a has not been amended. He concedes the Governor can correct the

error now by issuing a new proclamation that conforms to the requirements of the Act, if he desires to do so.

When the Governor gave the figures showing that a majority of the votes cast were in favor of the amendment, of necessity he thereby proclaimed that the amendment had been ratified. It is true that the proclamation does not purport to have annexed thereto a copy of the amendment, but the identity of the amendment is established by reference in the proclamation to Chapter 304 of the 1958 Acts of the General Assembly of Virginia, which as stated below sets forth the amendment verbatim.

Moreover, as respondent properly concedes, the Governor's proclamation is not essential to the ratification of the amendment. It is the ascertained majority of the vote of the electors which gives effect to the amendment and not the proclamation of the Governor. *Wilson* v. *The State*, 15 Tex. App. 150, 153; *Graham* v. *Miller*, 348 Mich. 684, 699, 84 N. W. 2d 46, 53.

In his answer filed to the petition for a writ of mandamus, respondent stated that he had doubts whether the election at which the electors purportedly approved the amendment was a "valid or an effective election" unless the posting by the sheriffs and sergeants required by the Act was had in accordance with its terms. He therefore, called for proof of the fact of such posting. As a result a certificate of Levin Nock Davis, Secretary of the State Board of Elections, as well as certificates of performance of the individual sheriffs and sergeants in the Commonwealth, were filed by stipulation as a part of the record in this case.

Here the Act of Submission does not require the sheriffs and sergeants to make a return. Respondent maintains that these certificates legally prove nothing, because the great weight given the return of a sheriff, or other officer, attaches only when he is directed to make a return; that when such officer is directed to do an act and not directed to make a return, then his statement about the manner in which he performed the act is mere hearsay and entitled to no more weight than any other individual. We agree that the questioned certificates are not proper evidence since the officers were not required to make a return. In 2 Jones on Evidence, 4th Edition, § 631, pp. 1191, 1192, it is said: "* * * Where an officer is obligated to certify certain facts—like the service of process and similar acts—his return is generally received as evidence. However, a certificate or return may not be introduced if the officer has not been required

by law to make it. * * *" See *Strandberg* v. *Stringer*, 125 Wash. 358, 216 Pac. 25; *Cox* v. *State*, 61 Okla. 182, 160 Pac. 895.

In *Shannon* v. *McMullin*, 25 Gratt. (66 Va.) 211, 218, the sheriff made an addition to the return required by law. There the court observed:

"* * * The pretended additional return is not conclusive nor even *prima facie* evidence against the respondent. The cases referred to in Crocker on Sheriffs, § 47, fully sustain this proposition. 'Where the process is returnable process,' says that writer, 'if the officer make return of the performance of acts beyond his duty under such process, such return will be invalid as to such parts, and will not be evidence, though the addition of such parts will not render the the whole return void, but it will be good to the extent he was authorized to make return. * * * ' " See also *Alexander* v. *Byrd, and Al.*, 85 Va. 690, 698, 8 S. E. 577.

■ There is no evidence before us, however, that the sheriffs and sergeants did not post copies of the Act of Submission as required by its terms, and the presumption prevails that they have performed faithfully the duties with which they were charged. See *Fleming* v. *Commonwealth*, 191 Va. 288, 293, 61 S. E. 2d 1; *Jacob* v. *Commonwealth*, 148 Va. 236, 242, 138 S. E. 574; 7 M. J., Evidence, § 25, p. 359; 20 Am. Jur., Evidence, § 170, p. 174.

■ There is ample proof Section 115a was amended on November 4, 1958 by adding the last paragraph thereof. In his proclamation the Governor proclaimed, pursuant to the requirements of Chapter 304, *supra*, that 292,281 votes were cast for the proposed amendment and 130,348 votes were cast against it, as ascertained by the State Board of Elections. Chapter 304, *supra*, under which the question was submitted to the people, sets forth verbatim the proposed amendment. Thus we observe the amendment is identified in the proclamation. The amendment is also carried in the official Code of Virginia. Moreover, the General Assembly met in extra session in January, 1959, approximately two months after ratification of the amendment, and enacted as emergency legislation pursuant to the amendment the statutes questioned here. Certainly recognition of its adoption by that legislative body carries weight. We hold Section 115a was duly amended by the addition thereto of the last paragraph thereof as shown above.

■ It is respondent's next contention that the statutes are unconstitutional, because under § 15-666.70 the indebtedness is to be evi-

denced by "negotiable bonds"; under § 15-666.76 such bonds "shall be deemed negotiable instruments under the laws of this State", and the Board of Trustees of the Virginia Supplemental Retirement System may sell such bonds which are made securities in which public officers and bodies of the State, all localities, banks, insurance companies and fiduciaries may invest. He argues that by Section 115a, as amended, which authorized the General Assembly by general law to permit the school board of a county "to borrow money" for school construction purposes from the Retirement System upon approval of the Board of Supervisors, the giving of negotiable bonds made valid for all types of investments and which may be sold by the Retirement System is not authorized.

Respondent is concerned that the Board of Trustees of the Retirement System might set itself up as a broker through whom school boards' negotiable bonds may be channeled into the hands of banks, insurance companies and fiduciaries, thus emasculating the whole of Section 115a, *supra,* so far as school indebtedness is concerned. Section 15-666.76, *supra,* does empower the Board of Trustees, in its discretion to sell any such bonds purchased and held by it from time to time "as to it may seem desirable in the management of the funds under its control." Evidently such a provision was considered expedient in order for the Board of Trustees to be free to meet its retirement obligations and exercise the proper management of the funds entrusted to it. It was hardly contemplated by the General Assembly that this provision be used by the Board of Trustees as authority to act as a broker and channel school construction negotiable bonds contracted for to banks, insurance companies and like institutions, which the counties, their districts and their school boards cannot do without first having the approval of the voters of the proper county or district. As was said by the Attorney General at the bar of this court, if such an operation developed it would be a violation of the spirit of the statute. In that event the General Assembly may amend or repeal the statute if it so desires.

"The contention that the legislature has exceeded its powers and that a statute is unconstitutional always presents a question for serious consideration. The Constitution of the State is not a grant of legislative powers to the General Assembly, but is a restraining instrument only, and, except as to matters ceded to the federal government, the legislative powers of the General Assembly are without limit. Every presumption, therefore, is to be made in favor of the consti-

tutionality of a statute, and it will never be declared to be unconstitutional unless it is plainly and clearly so. If any reasonable doubt exists as to its constitutionality, the act will be upheld. To doubt is to affirm. The mere passage of a statute is an affirmance by the General Assembly of its constitutional power to adopt it, and the case must be plain indeed before a court will declare a statute null and void. These principles have been repeatedly announced by this court from a very early date." (Citing cases.) *City of Roanoke* v. *Elliott*, 123 Va. 393, 406, 407, 96 S. E. 819. See also *Newport News* v. *Elizabeth City County*, 189 Va. 825, 831, 55 S. E. 2d 56.

The amendment to Section 115a of the Constitution is clear. By its expressed terms it provides that the General Assembly is not prohibited "from authorizing, by general law, the school board of any county to contract to borrow money from the Virginia Supplemental Retirement System, or any successor thereto, for the purpose of school construction, with the approval of the governing body of the county." The phrase "contract to borrow" does not limit or inhibit the General Assembly from providing that the debt shall be evidenced by negotiable bonds. The kind of evidence of debt required for the loan was left to the wisdom of that body under its plenary power. In *Bunch's Ex'or* v. *Fluvanna County*, 86 Va. 452, 456, 10 S. E. 532, which involved a statute authorizing the county court to borrow money for certain purposes; it was said:

"* * * That express power to a municipal corporation to borrow money includes the power to issue its bonds, or other usual securities, to the lender, is a proposition now too well settled to be questioned. Without such incidental power, the power to borrow money would ordinarily be nugatory, and wherever a general power to do a thing is given, every particular power necessary for doing it, is included. * * *"

Our conclusion is that §§ 15-666.69 through 15-666.76 and § 51-111.24(d), Code 1950, as amended, are valid and not in contravention of Section 115a of the Constitution of Virginia.

As conceded by respondent, proof of compliance with certain conditions precedent provided for in Section 15-666.70, is not necessary since a mandamus is not sought requiring him to issue warrants on account of bonds evidencing the specific loan to Rockbridge County School Board referred to in the petition.

The write of mandamus prayed for is awarded.

*Mandamus awarded.*