COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, O'Brien and Russell
Argued at Lexington, Virginia


ARTHUR ANDERSON WARREN

v.      Record No. 2086-17-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
JANUARY 15, 2019


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Glenn L. Berger (Berger & Thornhill, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Arthur Anderson Warren was convicted in a bench trial of soliciting another person "to

carnally know a brute animal or to submit to carnal knowledge with a brute animal" in violation

of Code §§ 18.2-29[1] and 18.2-361(A).  He asserts on appeal that the trial court erred in failing to

dismiss the indictment because Code § 18.2-361(A) is unconstitutional in that it criminalizes

"private sexual conduct of consenting adults."  For the reasons that follow, we disagree and

affirm the judgment of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the Commonwealth as the prevailing

party below.  Tucker v. Commonwealth, 268 Va. 490, 492 (2004).  So viewed, the evidence

established that, in October of 2016, Warren videotaped on his cellphone encounters he had with

---

[1] In pertinent part, Code § 18.2-29 provides that "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a felony other than murder, shall be guilty of a Class 6 felony."  In this case, Warren was convicted of soliciting a person to violate Code § 18.2-361(A).

K.H. and her dog. The videos were sexual in nature and showed, among other things, the dog's tongue penetrating K.H.'s vagina while K.H. performed oral sex on Warren.[2] Warren can be heard on the videos encouraging the dog and directing K.H. to position her legs so as to give the dog improved access to her body. The videos were played at trial.

In March of 2017, Deputy Sheriff Adam Reynolds spoke with Warren on an unrelated matter. Unprompted, Warren asked Reynolds if "bestiality type stuff" was "legal or illegal," described the cellphone videos, and offered to show them to Reynolds. Reynolds did not view the videos, but contacted Investigator Janet Sergeant. Although Warren volunteered to show the videos to the officers, they obtained a search warrant before removing the videos from Warren's cellphone. Sergeant testified that she viewed the videos and recognized the voices of K.H. and Warren.

Warren moved to dismiss the indictment on constitutional grounds. Specifically, he argued that Code § 18.2-361(A) was both facially unconstitutional and unconstitutional as applied to him after the United States Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003). He argued that the conduct depicted in the videos could not be subject to criminal sanction because it amounted to nothing more than consensual sexual conduct involving adults.

The trial court held a hearing on the motion on August 14, 2017. After hearing the arguments of the parties, the trial court denied the motion.

The matter proceeded to trial. Warren did not offer any evidence. Instead, in addition to his constitutional arguments, he argued that the activities depicted in the videos were insufficient to establish a violation of Code §§ 18.2-29 and 18.2-361(A). The trial court rejected his arguments, finding that the videos demonstrated that Warren had solicited K.H. to engage in

---

[2] K.H. was charged for her role in the offense. She pled guilty to a misdemeanor and was sentenced to probation.

sexual conduct with an animal and that she had done so. Accordingly, the trial court convicted Warren of the charged offense.

On appeal, Warren does not challenge the sufficiency of the evidence to support his conviction. Rather, he limits his challenge to the constitutionality of Code § 18.2-361(A), asserting that it violates his due process rights. He argues that the statute is both facially unconstitutional and unconstitutional as applied to his conduct depicted in the videos, which he contends is nothing more than "private sexual conduct of consenting adults."

ANALYSIS

I. Standard of Review

In challenging the constitutionality of Code § 18.2-361(A), Warren raises a question of law subject to *de novo* review. Shivaee v. Commonwealth, 270 Va. 112, 119 (2005). Our review of such questions begins with the presumption that the enactments of the General Assembly are constitutional. Marshall v. N. Va. Transp. Auth., 275 Va. 419, 427 (2008). "[E]very reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of its validity." Id. at 428. Although Congress may act only pursuant to a grant of enumerated power, United States v. Comstock, 560 U.S. 126, 133 (2010), the General Assembly is not so limited, Harrison v. Day, 201 Va. 386, 396 (1959) ("The Constitution of the State is not a grant of legislative powers to the General Assembly, but is a restraining instrument only, and, except as to matters ceded to the federal government, the legislative powers of the General Assembly are without limit."). Thus, "unless [a] statute clearly violates a provision of the United States or Virginia Constitutions[,]" the General Assembly has the power to enact it. Marshall, 275 Va. at 427.

## II.  Code § 18.2-361(A)

At the time of the offense, Code § 18.2-361(A) provided that "[i]f any person carnally knows in any manner any brute animal or voluntarily submits to such carnal knowledge, he is guilty of a Class 6 felony."  This version, which is currently in force, was adopted by the General Assembly in 2014.  2014 Va. Acts 794.

Although Warren was charged under the 2014 version of the statute, his constitutional challenge partially turns on cases dealing with an earlier version.  Because it is necessary to fully explain the issues and authorities raised by Warren, we note that, prior to the 2014 amendment, Code § 18.2-361(A) was broader, providing that "[i]f any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he . . . is guilty of a Class 6 felony . . . ." See id.

## III.  Warren's constitutional challenge to Code § 18.2-361(A)

Warren argues that both the prior version of Code § 18.2-361(A) and the 2014 version are unconstitutional in light of the United States Supreme Court's decision in Lawrence, which addressed a constitutional challenge to a Texas statute that criminalized acts of same-sex sodomy.  539 U.S. at 563.  Although the petitioners in Lawrence raised multiple constitutional arguments, the Lawrence majority decided that "the case should be resolved" on whether the sexual conduct at issue was a protected "liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution."  Id. at 564.

After noting that there was "no longstanding history in this country of laws directed at homosexual conduct as a distinct matter[,]" id. at 568, the majority concluded that the conduct at issue, "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle[]" in private, id. at 578, was protected by the due

process clause. In so holding, the majority wrote that the "State cannot demean [the petitioners'] existence or control their destiny by making their private sexual conduct a crime." Id.

Although the Lawrence majority made clear its view that the liberty interests protected by the due process clause prevented a state from criminalizing private, noncommercial, consensual acts of sodomy, whether heterosexual or same-sex, id. at 575, it did not address the extent to which those liberty interests might protect other sexual conduct. Specifically, the opinion does not explicitly address whether longstanding prohibitions on other activities with a sexual component, such as bestiality or prostitution, similarly violate the liberty interests protected by the due process clause.[3]

Warren argues that the reasoning of the Lawrence majority applies with equal force to his case, analogizing private acts of sodomy between consenting adults to private sexual activity by adults involving animals. He contends that, after Lawrence, the Commonwealth simply may not criminalize such sexual activities, and therefore, Code § 18.2-361(A) is both facially unconstitutional and unconstitutional as applied to him. We address each argument in turn.

### A. Warren's facial challenge

"A facially unconstitutional statute is invalid." Toghill v. Commonwealth, 289 Va. 220, 231 (2015). Thus, a litigant challenging the constitutionality of a statute "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications." Wash. State Grange v.

---

[3] The Lawrence majority does discuss historic prosecutions for bestiality in its discussion of the history of what it identifies as "sodomy, buggery, and crimes-against-nature statutes," 539 U.S. at 568-69, and specifically notes that Lawrence did "not involve . . . prostitution." Id. at 578. In criticizing the majority's rationale, Justice Scalia in dissent asserted that many longstanding criminal prohibitions involving some form of sexual conduct, including laws against bestiality, incest, and prostitution, are "called into question by today's decision[.]" Id. at 590 (Scalia, J., dissenting). However, the majority never expressly took a position regarding such statutes.

Wash. State Republican Party, 552 U.S. 442, 449 (2008) (alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

In support of his argument that, after Lawrence, Code § 18.2-361(A) is facially unconstitutional, Warren cites to the decision of the United States Court of Appeals for the Fourth Circuit in MacDonald v. Moose, 710 F.3d 154 (4th Cir. 2013), a federal habeas corpus proceeding challenging the constitutionality of the pre-2014 version of Code § 18.2-361(A).

Like Warren, MacDonald was charged with violating Code § 18.2-29 by soliciting someone to violate Code § 18.2-361(A). Unlike Warren, MacDonald was not charged for soliciting someone to commit bestiality, but rather, the underlying "predicate felony for MacDonald's criminal solicitation offense was the Commonwealth's 'Crimes Against Nature' statute, which criminalizes, *inter alia*, 'carnal knowledge' by one person of another by the anus or mouth, an act commonly known as sodomy." Moose, 710 F.3d at 156. Specifically, MacDonald was convicted as a result of using a telephone to solicit a minor to meet him in a Home Depot parking lot and, after further discussions and travel, seeking to have her perform oral sex on him. Id. at 156-57. Despite the fact that the solicitation was of a minor and at least partially occurred in public as opposed to in the privacy of a home, the Fourth Circuit struck down what it characterized as the "anti-sodomy provision" of Code § 18.2-361(A) as facially unconstitutional. Id. at 156.

Although it used the facial label to describe its ruling regarding Code § 18.2-361(A), the Fourth Circuit made clear its view that Lawrence did not necessarily prevent states from criminalizing sexual conduct involving something other than consenting adults in private. In explaining the limits of its decision, the Moose court noted that it "could be that a statute closely related to the anti-sodomy provision—for example, Virginia Code section 18.2-361(B), which criminalizes incestuous sodomy involving both minors and adults—might well survive review

- 6 -

under <u>Lawrence</u>, as may that part of section 18.2-361(A) that outlaws bestiality." <u>Id.</u> at 167. In fact, in a footnote, the court disclaimed that its decision had any effect on Virginia's prohibition on bestiality, writing that "[t]he constitutionality of the bestiality portion of subsection (A) is not challenged in this proceeding nor affected by today's decision." <u>Id.</u> at 156 n.2.

Warren now presents us with such a challenge to the anti-bestiality provision left unaddressed by the Fourth Circuit in <u>Moose</u>. We need not, however, determine whether the logic of <u>Moose</u> requires a finding of unconstitutionality because <u>Moose</u>, which is not binding authority, was not the final word on the constitutionality of the pre-2014 version of Code § 18.2-361(A).

In <u>Toghill</u>, the Virginia Supreme Court was faced with a constitutional challenge to the pre-2014 version of Code § 18.2-361(A) in a case in which the defendant had used the Internet to solicit oral sex from someone he believed to be a minor. 289 Va. at 224. In arguing his conviction was in error, Toghill asserted that the predicate felony for his solicitation offense, Code § 18.2-361(A), was unconstitutional and cited the Fourth Circuit's decision in <u>Moose</u> as support for his position. <u>Id.</u>

Acknowledging what the Fourth Circuit had ruled in <u>Moose</u>, our Supreme Court emphasized that "[w]hile this Court considers Fourth Circuit decisions as persuasive authority, such decisions are not binding precedent for" the courts of the Commonwealth. <u>Id.</u> at 227 (citations omitted). Conducting its own analysis, our Supreme Court found that the <u>Lawrence</u> majority had acknowledged "contexts in which a state can criminalize sodomy[,]" <u>id.</u> at 234 (citing <u>Lawrence</u>, 539 U.S. at 578), and thus, concluded that there were constitutional applications of what the Fourth Circuit had termed the "anti-sodomy provision" of Code § 18.2-361(A), <u>id.</u> at 231. Recognizing that, although there were constitutional

applications of the statute, <u>Lawrence</u> rendered some applications of Code § 18.2-361(A) unconstitutional, our Supreme Court adopted a limiting construction of the statute, holding that

> Code § 18.2-361(A) cannot criminalize private, noncommercial sodomy between consenting adults, but it can continue to regulate other forms of sodomy, such as sodomy involving children, forcible sodomy, prostitution involving sodomy and sodomy in public. The easy to articulate remedy is that Code § 18.2-361(A) is invalid to the extent its provisions apply to private, noncommercial and consensual sodomy involving only adults.

<u>Id.</u> at 234.[4]

The Virginia Supreme Court's conclusion that the pre-2014 version of Code § 18.2-361(A) was not facially unconstitutional is dispositive of Warren's facial challenge to the current version. We are, of course, "bound by the decisions of the Supreme Court of Virginia and are without authority to overrule" them. <u>O'Malley v. Commonwealth</u>, 66 Va. App. 296, 301 (2016) (quoting <u>Roane v. Roane</u>, 12 Va. App. 989, 993 (1991)). If <u>Lawrence</u>, which involved a prohibition on same-sex sodomy, did not facially invalidate the anti-sodomy provision of then Code § 18.2-361(A), it defies logic that it facially invalidates the bestiality portion of the statute that existed before the 2014 amendment and is all that remains after that amendment. Certainly, if the anti-sodomy provision constitutionally could have been enforced in the context of public, non-consensual, or commercial sodomy, and/or in instances involving minors, the anti-bestiality provision can be enforced in similar circumstances. Because, consistent with <u>Toghill</u>, there are constitutional applications of the Virginia bestiality statute, Warren's facial challenge to Code § 18.2-361(A) fails.

---

[4] In adopting this limiting construction, the Virginia Supreme Court permissibly "construe[d] the plain language of a statute to have limited application if such a construction will tailor the statute to a constitutional fit." <u>Va. Soc. for Human Life, Inc. v. Caldwell</u>, 256 Va. 151, 157 n.3 (1998).

Although Toghill provides the rule of decision regarding Warren's facial challenge, we note that, after the Virginia Supreme Court decided Toghill, the Fourth Circuit revisited its conclusion that the anti-sodomy provision of the pre-2014 version of Code § 18.2-361(A) was facially unconstitutional. In addressing Toghill's federal habeas challenge to his Virginia conviction under the appropriate standard, the Fourth Circuit held that

> this panel is informed by the decision in Moose. But we, unlike the panel in Moose, are also bound by the Supreme Court of Virginia's post-Moose authoritative, narrowing construction of the anti-sodomy statute, and we are now limited to considering whether the statute, as construed by the state court, is still facially unconstitutional. Clearly, Virginia's anti-sodomy statute, as authoritatively construed by the Supreme Court of Virginia, does not criminalize conduct that Lawrence declared to be protected by the liberty interests guaranteed by the Due Process Clause, and it is, therefore, not facially unconstitutional. And we cannot say that the Supreme Court of Virginia's decision to adopt this narrowing construction, under its jurisprudence, was contrary to or an unreasonable application of applicable Supreme Court precedent.

Toghill v. Clarke, 877 F.3d 547, 559 (4th Cir. 2017) (internal citations omitted), cert. denied, 139 S. Ct. 223 (2018). Accordingly, we find Warren's facial challenge to the bestiality statute to be wholly without merit.

### B. Warren's as applied challenge

We now turn to Warren's as applied challenge to Code § 18.2-361(A). Given that none of the decisions discussed above directly addressed an as-applied challenge to the bestiality statute on due process grounds, we conduct the analysis in the first instance.

The United States Supreme Court long has recognized that "[t]he Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." Washington v. Glucksberg, 521 U.S. 702, 719 (1997). Over the last century, the high court has "held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes" many rights that Americans

historically have viewed as fundamental.  Id. at 720.  In addition to protecting fundamental rights, "[t]he Constitution also requires" that state prohibitions on certain conduct "be rationally related to legitimate government interests."  Id. at 728.  We analyze Warren's claim against this backdrop.

### 1.  Warren claims a right to engage in bestiality

In addressing claims based upon substantive due process, a court must begin with "a careful description of the asserted fundamental liberty interest."  Id. at 721 (internal quotation marks and citations omitted).  Here, although Warren characterizes the claimed right as "the right [of adults] to engage in consensual private conduct without intervention of the government," we conclude that the right he actually asserts is a right to engage in bestiality.

Despite Warren's characterization of the claimed right, it is unquestionably true that Code § 18.2-361(A), as it presently exists, does not place any limitation on the rights of consenting adults to engage in private, consensual, noncommercial, sexual acts with each other.  By its terms, it only prohibits sexual conduct involving a "brute animal[.]"  Because the statute prohibits only sexual activity between people and animals, the only right which it could possibly infringe would be a right to engage in such conduct, that is, a right to engage in bestiality.

This conclusion finds support in the limiting construction adopted by our Supreme Court in Toghill for the prior version of Code § 18.2-361(A).  There, the Court held that the anti-sodomy provision could not "apply to private, noncommercial and consensual sodomy involving *only* adults."  Toghill, 289 Va. at 234 (emphasis added).  The conduct at issue here involved something other than "*only*" consenting adults—it involved sexual activity with a dog.  The addition of the dog fundamentally alters the equation, and thus, the claimed right is broader than the right of consenting adults to engage in noncommercial sex acts in private; it necessarily includes the claim of a right to engage in sexual acts with animals.

## 2. There is no fundamental right to engage in bestiality

To qualify for heightened protection under the due process clause, a claimed right must be "deeply rooted in this Nation's history and tradition[.]" Glucksberg, 521 U.S. at 721 (internal quotation marks and citations omitted). It must be "so rooted in the traditions and conscience of our people as to be ranked as fundamental." Reno v. Flores, 507 U.S. 292, 303 (1993) (internal quotation marks and citations omitted). The claimed right must belong to the class of rights "long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399 (1923).

A claimed right to engage in sexual conduct with animals simply fails this historical test. Bestiality was a crime at common law. 4 W. Blackstone, Commentaries 216 (1769). In one form or another, it has been criminalized in Virginia by statute since at least 1792. 1 Rev. Code 1803 at 179 (listing 1792 Virginia statute criminalizing "[b]uggery" with a "beast"); see also Commonwealth v. Thomas, 1 Va. Cas. 307, 3 Va. 307 (1812) (recognizing crime of buggery for sex with a horse). Although we recognize these same authorities also may have prohibited acts of sodomy that Lawrence held may no longer be criminalized, we reject the attempt to equate private sexual acts among consenting adults with sexual acts between humans and animals. Warren has not identified any court that has concluded that bestiality is a fundamental liberty interest protected by the due process clause, and we decline his invitation to recognize bestiality as a fundamental right.

## 3. Rational reasons support the statute

As noted above, the due process clause not only prohibits states from infringing on fundamental rights, it requires that state prohibitions on certain conduct "be rationally related to legitimate government interests." Glucksberg, 521 U.S at 728. Virginia's ban on bestiality passes this test as well.

Assuming without deciding that Warren is correct that <u>Lawrence</u> removed morality as a legitimate reason for criminalizing certain sexual conduct such as bestiality, additional rationales exist for the General Assembly's decision to ban sex with animals.[5] First, there can be no serious argument that the Commonwealth does not have a legitimate interest in preventing cruelty to animals. "[B]estiality [can be] considered animal abuse because the sexual molestation of animals by humans may physically injure or kill the animal victim." Emily Malhiot, <u>Chapter 86: Nevada Finally Outlaws Bestiality</u>, 49 U. Pac. L. Rev 555, 561 (2018) (internal quotation marks and citation omitted). Most "[r]ecent bestiality laws . . . are categorized as 'animal cruelty statutes,' demonstrating the belief that bestiality is a crime against an animal." <u>Id.</u> at 563.

The General Assembly's interest in protecting public health also provides a justification for the ban on bestiality. "Scientists estimate that more than 6 out of every 10 known infectious diseases in people are spread from animals, and 3 out of every 4 new or emerging infectious diseases in people are spread from animals." Center for Disease Control, <u>Zoonotic Diseases</u>, https://www.cdc.gov/onehealth/basics/zoonotic-diseases.html (last visited Jan. 2, 2018). Although not all of these diseases are or were transmitted by sexual contact, interspecies sexual contact does provide a means of such transmission. Accordingly, numerous commentators have recognized that there is a public health justification for bestiality prohibitions. <u>See, e.g.</u>, Malhiot, 49 U. Pac. L. Rev at 563; E. Benton Keatley, <u>The Liberty of Innocent Delights: Obscene</u>

---

[5] It does not matter whether any member of the General Assembly voted for the ban on bestiality for any of these reasons. The existence of these possible, legitimate reasons for such a ban place the subject within the powers of the General Assembly. <u>Cf.</u> <u>F.C.C. v. Beach Commc'ns, Inc.</u>, 508 U.S. 307, 315 (1993) (In conducting rational basis review of a statute for equal protection purposes, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."). Furthermore, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." <u>Id.</u>

Devices and the Limits of State Power After *Lawrence v. Texas*, 16 Wash. & Lee J. Civil Rts. & Soc. Just. 257, 295 (2009); Justin P. Nichols, <u>The Hidden Dichotomy in the Law of Morality</u>, 31 Campbell L. Rev. 591, 605 (2009); and Mitchell F. Park, <u>Defining One's Own Concept of Existence and the Meaning of the Universe:  The Presumption of Liberty in *Lawrence v. Texas*</u>, 2006 B.Y.U. L. Rev. 837, 883 (2006).

Given that Virginia's ban on bestiality is rationally related to these legitimate state interests and does not intrude upon a fundamental right, the General Assembly did not offend the due process clause when it adopted the current version of Code § 18.2-361(A) in 2014. Accordingly, Warren's as applied challenge to Code § 18.2-361(A) fails.

CONCLUSION

For the foregoing reasons, the General Assembly's prohibition of bestiality does not violate the Due Process Clause of the Constitution.  Accordingly, we reject Warren's challenge to the constitutionality of Code § 18.2-361(A) and affirm the judgment of the trial court.

<u>Affirmed.</u>